1
2
3
4
5
6
7                IN THE UNITED STATES DISTRICT COURT FOR THE
8                      EASTERN DISTRICT OF CALIFORNIA
9
10   KRISTA GARCIA, by and through her      )   1:08-CV-1924  AWI DLB
     guardian ad litem Lorraine Marin,     )
11                                          )   ORDER ON DEFENDANTS'
                  Plaintiff,               )   MOTION TO DISMISS AND
12                                          )   ORDER REMANDING
            v.                              )   CALIFORNIA CIVIL CODE §
13                                          )   51.9 CLAIM TO THE FRESNO
     CLOVIS UNIFIED SCHOOL                  )   COUNTY SUPERIOR COURT
14   DISTRICT, DOUGLAS BURNS, BARRY)
     JAGER, GREG BASS, ANN-MAURA            )
15   CERVANTES, MAI YIA MOUA, and           )
     DOES 1 through 20, inclusive,          )
16                                          )
                  Defendants.              )
17                                          )
                                            )
18   _____)
19   _____
20
21        This case was removed from the Fresno County Superior Court on the basis of federal
22   question jurisdiction.  Plaintiff Krista Garcia ("Garcia"), through her guardian ad litem, alleges
23   fourteen causes of action against Clovis Unified School District ("CUSD") and its employees
24   Douglas Burns ("Burns"), Barry Jager ("Jager"), Greg Bass ("Bass"), Anna-Maura Cervantes
     ("Cervantes"), and Mai Yia Moua ("Moua").  Garcia's claims stem from conduct by her former
25   teacher Burns and CUSD's reaction to Burns's conduct.  CUSD moves to dismiss each cause of
26   action alleged against it under Federal Rule of Civil Procedure 12(b)(6).  For the reasons that
27   follow, CUSD's motion will be granted in part and denied in part.
28

# BACKGROUND

From the complaint,[1] during the 2007-2008 school year:  Garcia was a student at Reyburn Middle School ("the School"), Jager was the principal of the School, Moua was the eighth grade guidance counselor at the School, Burns was a teacher (apparently math) at the School, and Bass and Cervantes were employees of CUSD.  See Complaint at ¶ 11.

In early November 2007 (hereinafter "the November Incident"), during Burns's math class, Garcia was walking back to her chair when she was approached from behind by Burns.  See id. at ¶ 12.  Burns lifted Garcia upside down and completely off the ground.  See id.  "Burns held Garcia, including on or about her buttocks, 'feeling her,' positioning her head directly in his groin area and proceeded to shake her up and down several times, in front of the entire class."  Id.  After Burns put her down, Garcia put her head down until class was over.  See id. at ¶ 13.  Garcia's classmates encouraged her to report the incident "to the office."  Id.  Garcia then immediately went to "the office" and reported the incident to "an administrator/assistant," believed to be the eighth grade secretary.  See id.  The secretary stated that she would contact Garcia's mother and report the matter to other personnel; she then instructed Garcia to return to class.  See id.

Garcia did not tell her mother about this incident until April 2008, and CUSD never contacted Garcia's mother to advise or discuss this incident.  See id. at ¶ 14.  Garcia states on information and belief that CUSD made no official report or took any action regarding Burns and the November Incident.  See id. at ¶ 15.

After the November Incident, Garcia felt humiliated and fearful whenever she had to be around Burns and tried to avoid him as much as possible.  See id. at ¶ 16.  However, Garcia remained enrolled in Burns's math class.  See id.

Apparently no further incidents occurred until March 2008 (hereinafter "the March Incident").  Garcia was waiting outside on School grounds for her mother to pick her up from classes.  See id. at ¶ 17.  Garcia was waiting with her brother and some of his friends, who were

---

[1]Since this is a Rule 12(b)(6) motion, the Court accepts as true the factual allegations in the complaint.  See Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999).

also students at the School. See id. Burns approached the group and had a crossing sign in his hand. See id. at ¶ 18. Burns spoke to Garcia about seeing her in class and then, as he turned to walk away, he deliberately turned and "forcefully struck" Garcia with the sign on her buttocks. See id. Burns then left, but laughed out loud as he walked away.[2] See id. Garcia was scared and confused, and her brother pulled her next to him. See id. at ¶ 19. Garcia did not tell her mother about this incident until April 2008, and continued to try to avoid Burns because she continued to feel fearful and humiliated. See id.

On April 1, 2008, Garcia attended a school attendance review board ("SARB") meeting at the CUSD office. See id. at ¶ 20. Garcia, her mother, Bass, Cervantes, Moua, and "others" were present at this meeting. See id. During the course of the SARB meeting, Garcia broke down and cried and gave a brief account of the November and March Incidents with Burns. See id. at ¶ 21. An unidentified administrator stated, in essence, that the meeting was not the time or place to discuss the Incidents. See id. Bass stated that it was the appropriate time and place. After more discussion, the unidentified administrator again stated that this was not the time or place to discuss such matters. See id. Garcia's mother attempted to get specifics as to whom she needed to contact and when was the proper time to discuss the Incidents. See id. She was told to schedule a meeting with Jager. See id. On information and belief, Garcia alleges that no action was taken with respect to Burns and the Incidents disclosed by Garcia at the meeting. See id. Garcia requested to be removed from Burns's classroom and "was moved at this time." Id. at ¶ 22.

From April 2 through April 11, 2008, Garcia's mother attempted to schedule a meeting with Jager. See id. at ¶ 23. On April 11, 2008, Jager and Garcia's mother met. See id. at ¶ 24. Jager stated that he was very concerned, that he and CUSD considered the reports by Garcia to be very serious, and that the matter was being dealt with appropriately. See id. Jager also told Garcia's mother that she would likely hear from other individuals and/or agencies in the near future, including law enforcement. See id.

---

[2]Garcia alleges that this conduct constituted corporal punishment in violation of California Education Code § 49001. See Complaint at ¶ 18.

On information and belief, Jager entered Burns's classroom and had a conversation with him about the March Incident. See id. at ¶ 25. Other children reported to Garcia that Burns told Jager that Burns was in the cross walk and "used the sign to 'hurry' [Garcia] out of the street." Id. On information and belief, Jager took no other action regarding Burns. Id.

From May 2008, to the end of the school year, Burns continued to stare and leer at Garcia "from head to toe" and to laugh and snicker at her when he saw her on campus. Id. at ¶ 27. Although Garcia tried to avoid Burns, she could not do so. See id. Garcia's attorneys wrote to CUSD regarding Garcia's complaints. See id. ¶ 28. Thereafter, CUSD removed Burns from the classroom. See id. Burns had continued to teach math class until May 2008, when he was removed. See id. at ¶ 26. On information and belief, Burns addressed his students prior to leaving his classroom. See id. at ¶ 29. Burns told his students that he was leaving because Garcia was suing him for hurrying her across the street with a crossing sign. See id. "Thereafter, students in the class harassed and retaliated against [Garcia]." Id.

Garcia filed this lawsuit in the Fresno County Superior Court in November 2008. Defendants removed in December. In her complaint, Garcia alleges the following causes of action: (1) assault, (2) battery, (3) false imprisonment, (4) intentional infliction of emotional distress, (5) sexual harassment under California Civil Code § 51.9, (6) violations of California education code §§ 201(c), (f) and 212.5 (7) negligence *per se* through California Penal Code § 11166, (8) negligent supervision, (9) negligent training, (10) negligent hiring/retention, (11) violation 20 U.S.C. § 1681(a) ("Title IX"), and (12) two violations of 42 U.S.C. § 1983 by Burns and CUSD respectively.

**GENERAL LEGAL FRAMEWORK**

*Rule 8(a)*

Federal Rule of Civil Procedure 8(a) sets the pleading standard for claims for relief. "Under the liberal rules of pleading, a plaintiff need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Sagana v. Tenorio, 384 F.3d 731, 736 (9th Cir. 2004) (quoting Fed. R. Civ. P. 8(a)). This rule does "not require a claimant to set out in

4

detail the facts upon which he bases his claim." Conley v. Gibson, 355 U.S. 41, 47 (1957). The pleadings need only give the opposing party fair notice of a claim and the claim's basis. Conley, 355 U.S. at 47; Sagana, 384 F.3d at 736; Fontana v. Haskin, 262 F.3d 871, 877 (9th Cir. 2001). 47). The pleadings are also to "be construed as to do substantial justice," and "no technical forms of pleading . . . are required." Fed. Rules Civ. Pro. 8(e)(1), 8(f); Sagana, 384 F.3d at 736; Fontana, 262 F.3d at 877.

*Rule 12(b)(6)*

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001); Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Marceau v. Balckfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court must also assume that general allegations embrace the necessary, specific facts to support the claim. Smith v. Pacific Prop. and Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004); Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994). But, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Courts will not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). Furthermore, Courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court has recently explained:

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

5

detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). Thus, to "avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead 'enough facts to state a claim to relief that is plausible on its face." Weber v. Department of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008) (quoting Twombly, 127 S. Ct. at 1974).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).


I.    SIXTH, SEVENTH & TWELFTH CLAIMS
      (Violations of California Education Code §§ 201(c), 212.5 and Title IX)

*Defendant's Argument*

CUSD argues, *inter alia*, that a person of sufficient authority was not informed of Burns's conduct until the April 1 meeting. Because it had no knowledge of the November and March Incidents until April, CUSD cannot be liable for them.

After April 1, there were no physical confrontations with Burns and staring and leering do not constitute sexual harassment. Further, CUSD was not "deliberately indifferent" to Garcia. The complaint shows that CUSD took immediate action to end the harassment when it removed Garcia from Burns's class and when it later removed Burns from teaching. That leering may have occurred or that the steps taken by CUSD may not have been successful does not in and of itself show deliberate indifference.

Finally, although Garcia alleges that other students harassed and retaliated against her, no facts are pled that either describe the retaliation and harassment or show that CUSD had knowledge of the retaliation and harassment.

1

*Plaintiff's Opposition*

Garcia argues that if it is assumed that CUSD did not have knowledge of Burns's conduct prior to the April 1 meeting, additional instances of sexual harassment after the November and March Incidents were reported to CUSD – Burns's repeated leering and staring at Garcia. Further, Burns used other students to harass and retaliate against Garcia. CUSD had knowledge of the harassment but was deliberately indifferent to her. Garcia could not avoid Burns, who was always on campus, and the harassment was so severe and pervasive that it deprived her of access to educational benefits and opportunities.

*Legal Standard – Title IX*[3]

Title IX provides in part that: "No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . ." 20 U.S.C. § 1681(a). Title IX encompasses sexual harassment of a student by a teacher and is enforceable through an implied private right of action for damages against a school district. Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 75- 76 (1992). In a teacher-on-student Title IX sexual harassment case, the student must show that the harassing conduct was so severe or pervasive that the student was deprived of access to the education benefits or opportunities provided by the school. See Stanley v. Trustees of the Cal. State Univ., 433 F.3d 1129, 1137 (9th Cir. 2006). However, damages for a teacher's sexual harassment of a student may not be recovered "unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct." Gebser v. Lago Vista Independent School Dist., 524 U.S. 274, 277 (1998); Bostic v. Smyrna School Dist., 418 F.3d 355, 360 (3rd Cir. 2005). The Supreme Court "expressly declined to impose liability on

---

[3]CUSD argues that the same standards govern both Garcia's California Education Code causes of action and her Title IX claim. In *Donovan v. Poway Unified Sch. Dist.*, 167 Cal.App.4th 567, 605 (2008), the court of appeal followed Title IX jurisprudence as enunciated in *Gebser* and *Davis*. *Donovan* involved Education Code § 220. See *id.* Garcia's claims involve Education Code §§ 201(c), 201(f) and 212.5. Garcia acknowledges *Donovan* and does not argue that *Donovan*'s adoption of Title IX jurisprudence is inapplicable to her claims. Instead, Garcia argues that she has made sufficient allegations to state claims. See Opposition at pp. 12, 15-16. As the parties are in agreement that Title IX standards apply, the Court will utilize Title IX standards to analyze Garcia's California Education Code claims. See *Donovan*, 167 Cal.App.4th at 605.

'principles of *respondeat superior* or constructive notice,' instead demanding actual notice to an official of the defendant." Oden v. N. Marianas College, 440 F.3d 1085, 1089 (9th Cir. 2006) (citing Gebser, 524 U.S. at 285). Accordingly, for a student to proceed on a claim against a school district for teacher-on-student harassment under Title IX, the student must establish: (1) she or he was subjected to a sexually hostile environment or quid pro quo sexual harassment; (2) she or he provided actual notice of the situation to an "appropriate person," who was, at a minimum, an official of the educational entity with authority to take corrective action and to end discrimination; and (3) the institution's response to the harassment amounted to "deliberate indifference." Klemencic v. Ohio State University, 263 F.3d 504, 510 (6th Cir. 2001).

A school's response amounts to "deliberate indifference" when it is "clearly unreasonable in light of the known circumstances" such that the "official decision . . . [is] not to remedy the violation." Oden, 440 F.3d at 1089 (citing Gebser, 524 U.S. at 290). "Deliberate indifference" is a high standard and requires conduct that is beyond mere negligence. See Baynard v. Malone, 268 F.3d 228, 236 (4th Cir. 2001); Doe v. Dallas Indep. Sch. Dist., 220 F.3d 380, 383-84 (5th Cir. 2000); see also Oden, 440 F.3d at 1089 ("Nonetheless the record fails to demonstrate that the delay was more than negligent, lazy, or careless."); Williams v. Paint Valley Local Sch. Dist., 400 F.3d 360, 367 (6th Cir. 2005). Deliberate indifference is a fact sensitive inquiry. See Doe, 220 F.3d at 384; cf. Oden, 440 F.3d at 1089. "Deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 645 (1999); Stanley, 433 F.3d at 1137. Although courts have indicated that continuing to utilize the same response after it has been shown to be ineffective, or not responding at all, or utilizing a "minimalist response" may demonstrate "deliberate indifference," see Escue v. Northern Okla. College, 450 F.3d 1146, 1155-56 (10th Cir. 2006); Vance v. Spencer County Public School Dist., 231 F.3d 253, 261-62 (6th Cir. 2000), a school is not deliberately indifferent simply because the response did not remedy the harassment or because the school did not utilize a particular discipline. See Escue, 450 F.3d at 1155; Williams, 400 F.3d at 367; Baynard, 268 F.3d at 236; Willis v. Brown Univ., 184 F.3d 20, 26 (1st Cir.

1999); cf. Oden, 440 F.3d at 1089.[4]

*Discussion*

After reviewing the Complaint, the Court believes that the facts pled by Garcia do not show deliberate indifference. Garcia does not dispute CUSD's contention that the first time CUSD had notice of the November and March Incidents was at the April 1, 2008 meeting.[5] At the meeting, Garcia requested to be removed from Burns's class and that request was granted. See Complaint at ¶¶ 20-22; cf. Peck v. W. Aurora Sch. Dist. 129, 2006 U.S. Dist. LEXIS 67145, *4-*9 (N.D. Ill. Aug. 30, 2006) (holding that several instances of conduct alleged in the complaint showed deliberate indifference by the school district including refusing to honor the student's request to be removed from the teacher's class without receiving a failing grade). This response would eliminate the regular and prolonged contact that Garcia would have with Burns in his math class. As such, in the spectrum of possible remedial conduct, it was not one that naturally would cause Garcia to undergo harassment by Burns or make her liable or vulnerable to it. See Davis, 526 U.S. at 645; Stanley, 433 F.3d at 1137.

Garcia contends that Burns's harassing conduct continued after April 1 because Burns would "leer and stare" at her. However, that an initial response does not remedy or prevent harassment from occurring is not, in and of itself, sufficient grounds for liability. See Williams, 400 F.3d at 367; Baynard, 268 F.3d at 236; Willis, 184 F.3d at 26. Garcia's allegations show that after she complained to CUSD (albeit through her attorneys) about Burns's leering and staring, CUSD responded. After Garcia complained about this conduct, CUSD removed Burns from the classroom altogether. See Complaint at ¶¶ 27-28. The Complaint shows that CUSD did not fail to respond to Garcia's additional complaints. CUSD took further corrective action beyond its initial response of removing Garcia from Burns's classroom. In other words, once it received

---

[4]The deliberate indifference standard enunciated by the Supreme Court is the same for student-on-student as well as teacher-on-student harassment cases. Williams, 400 F.3d at 367.

[5]Without more facts pled, Garcia's report of the November incident to the eighth grade secretary did not put CUSD on notice since it does not appear that a secretary would have sufficient "authority to institute corrective measures on the district's behalf." Gebser, 524 U.S. at 277. Garcia did allege that Bass and Jager had sufficient authority to institute corrective measures. See Complaint at ¶ 95.

word that further harassing conduct was occurring, CUSD tried a different course of corrective conduct. Cf. Vance, 231 F.3d at 261-62 (holding that deliberate indifference may be shown by continuing to utilize the same failed responses to complaints of harassment). Removing Burns from any classroom duties is a form of punishment and it was done as result of Garcia's complaints. See Complaint at ¶¶ 28-29. It is not a response that naturally would cause Garcia to undergo harassment by Burns or make her liable or vulnerable to it. See Davis, 526 U.S. at 645; Stanley, 433 F.3d at 1137.

With respect to any claims of retaliation and harassment by other students, there are insufficient facts pled. In fact, there are no facts alleged in the Complaint that describe conduct by other students. Without some facts that describe the harassment/retaliation by other students, Garcia is simply alleging a legal conclusion, which is not sufficient. See Twombly, 127 S. Ct. at 1964-65; Warren, 328 F.3d at 1139. Further, Garcia does not allege that CUSD was aware of the harassment by the other students. A school district is liable in damages for student-on-student harassment "only where they are deliberately indifferent to sexual harassment, *of which they have actual knowledge*, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities and benefits provided by the school." Davis, 526 U.S. at 650 (emphasis added). If CUSD did not have actual knowledge of harassment by the other students, then CUSD cannot be liable. Without allegations that at least somewhat describe the conduct by other students, and without allegations that CUSD actually knew of the harassment by the other students, Garcia has failed to allege a claim for student-on-student harassment/retaliation. See id.

Garcia's opposition focuses more on the allegations that harassment continued after the initial complaint was made on April 1; it does not adequately address whether CUSD was deliberately indifferent. The key is not whether the harassment ended, rather the key is CUSD's response once it actually learned that harassment continued to occur. Williams, 400 F.3d at 367; Baynard, 268 F.3d at 236; Willis, 184 F.3d at 26 (". . . if it learns that its measures have proved inadequate, it may be required to take further steps to avoid liability."). The allegations of the complaint show that each time CUSD was informed of Burns's conduct, it took different

corrective action and the Court does not see how the corrective conduct exposed Garcia to harassment or made her vulnerable to it. The Complaint affirmatively shows that CUSD was not deliberately indifferent to Garcia with respect to Burns. The Court has significant doubt whether Garcia can correct the deficiency with respect to her claim of teacher-on-student harassment. However, since the Court will be dismissing other claims with leave to amend, out of an abundance of caution, the Court will dismiss both the teacher-on-student and student-on-student claims with leave to amend.[6]

## II.     SEVENTH CAUSE OF ACTION
### (Violation of California Education Code §§ 201(f), 212.5 – "Failure to Prevent")

*Defendant's Argument*

CUSD argues that a claim of failure to prevent is a legal conundrum since a school district is liable only if it has actual knowledge of discrimination that has occurred and responds in a deliberately indifferent manner. However, the Tenth Circuit has noted that there can be no liability for failure to prevent harassment unless there is a school policy of indifference. Garcia fails to allege such a policy, and thus, fails to state a claim.

*Plaintiff's Argument*

Garcia does not respond to this argument.

*Resolution*

In a footnote, the Tenth Circuit has stated:

> Throughout its briefs, the School District repeatedly attempts to characterize the conduct by school officials of which Ms. Murrell complains as a failure to prevent one student from harassing another. . . . We agree with the School District that a failure to prevent sexual harassment by a student before it occurs does not violate Title IX or the Fourteenth Amendment absent a showing of an institutional policy of indifference. However, a refusal to remedy known sexual harassment is actionable.

Murrell v. School Dist. No. 1, 186 F.3d 1238, 1251 n.7 (10th Cir. 1999); see also Doe v. Ohio

---

[6]However, if Garcia chooses to pursue this claim, she must continue to include the allegations that the Court has found shows a lack of deliberate indifference. A second dismissal will not be avoided through simple omission of existing allegations. The new allegations must show how CUSD's conduct was deliberately indifferent and must comply with Federal Rule of Civil Procedure 11.

11

State Univ. Bd. of Regents, 2006 U.S. Dist. LEXIS 70444, *34 (S.D. Ohio Sept. 28, 2006). It does not appear that either California courts or the Ninth Circuit have adopted *Murrell*'s "failure to prevent" cause of action under Title IX or the California Education Code. Assuming without deciding that California courts would adopt the Tenth's Circuit footnote and recognize this cause of action, CUSD is correct. There is no allegation that CUSD had an institutional policy of indifference prior to Burns's conduct. As such, dismissal is appropriate.

### III.   FIRST, SECOND, THIRD, & FOURTH CLAIMS
(Assault, Battery, False Imprisonment, Intentional Infliction of Emotional Distress)

*Defendant's Argument*

CUSD argues that the first four claims in the complaint are based on vicarious liability since they rest on conduct committed solely by Burns. However, under *John R. v. Oakland Unified Sch. Dist.*, 48 Cal.3d 438 (1989), school districts are not vicariously liable for torts based on sexual assaults by a teacher. Dismissal as per *John R.* is appropriate.

Also, to the extent that Garcia argues that CUSD ratified the conduct of Burns, simply because CUSD did not terminate Burns's employment does not show ratification. There are no facts that show CUSD voluntarily elected to treat Burns's conduct as their own. In fact, CUSD took corrective action against Burns by removing him from his classroom duties. The Complaint acknowledges that CUSD repudiated Burns's conduct.

*Plaintiff's Opposition*

Garcia argues that CUSD may be held liable under a *respondeat superior* theory. None of the elements of the first four causes of action require any showing of sexual assault or sexual harassment. Under California Government Code § 815.2(a), the doctrine of *repondeat superior* applies to public entities and covers both intentional and negligence based torts. Several California decisions have held a public entity may be held liable for its employee's battery, assault, and false imprisonment. Liability may be established if the public employee's conduct was within the course and scope of his employment. Here, Burns's conduct was within the course and scope of his employment with CUSD as a teacher.

CUSD also may be held liable because it ratified Burns's conduct. The failure to discharge an employee after knowledge of his wrongful acts may be evidence supporting ratification. Ratification applies to intentional torts like battery, assault, and false imprisonment.

*Discussion*

1.      Respondeat Superior

In *John R.*, the California Supreme Court rejected an attempt to hold a school district vicariously liable under a *respondeat superior* theory for the sexual molestation of student by a teacher. John R. v. Oakland Unified School Dist., 48 Cal.3d 438, 447-452 (1989). Thus, in California, a "school district cannot be held vicariously liable for a teacher's sexual misbehavior with a student." Steven F. v. Anaheim Union High School Dist., 112 Cal. App. 4th 904, 908-09 (2003); see also Ortega v. Pajaro Valley Unified Sch. Dist., 64 Cal.App.4th 1023, 1058 (1998) (citing *John R.* in support of refusal to hold a school district liable for a teacher's sexual misconduct under a co-conspirator theory). As "*John R.* makes it clear that a teacher's sexual abuse of a child is not an act for which a school district may be held responsible," the "only way a school district may be held liable must be 'premised on its own direct negligence in hiring and supervising the teacher.'" See Steven F., 112 Cal.App.4th at 909 (citing John R., 48 Cal.3d at 453; quoting parenthetically Ortega., 64 Cal.App.4th at 1057). In other words, a school district "can be held liable only for its own conduct which causes injury." Ortega, 64 Cal.App.4th at 1057; see Steven F., 112 Cal.App.4th at 909.

a.      Assault & Battery

Garcia's assault and battery causes of action are premised on the November and March Incidents. The allegations in the complaint concerning the November Incident read, "Burns held Garcia, including on or about her buttocks, 'feeling her,' positioning her head directly in his groin area and proceeded to shake her up and down several times, in front of the entire class." Complaint at ¶ 12. By stating that Burns held Garcia "about her buttocks," that Burns was "feeling her," and that Garcia's head was positioned "directly in his groin area" as Burns shook her up and down, the complaint clearly paints the picture of conduct of a sexual nature. See also Plaintiff's Opposition at p. 11.

As for the March Incident, the Complaint states in part, "[Burns] spoke to [Garcia] about seeing her in class and then, as he turned to walk away, he deliberately turned and forcefully struck [Garcia] on the buttocks with the sign. Burns then laughed out loud as he walked away." Complaint at ¶ 18. This allegation is less overtly sexual then the allegations of the November Incident. On the one hand, the claim describes a forceful strike to Garcia's person. On the other hand, the focus of the touching was on Garcia's buttocks. Cf. Cal. Pen. Code § 11165.1(b)(4). The allegation could be read as complaining only about a "general battery" or it could be read as complaining about conduct of a sexual nature. In Garcia's opposition, however, she alleges, "The operative facts of these four causes of action are that Burns first physically accosted and manhandled Garcia in a sexually suggestive manner. Second, Burns thereafter physically assaulted Garcia in a sexually suggestive manner." Opposition at p. 11. Although this portion of Plaintiff's opposition is made with respect to the fifth, sixth, seventh, and twelfth causes of action, they describe the November Incident and the March Incident. From this opposition, Garcia views the March Incident as sexual in nature. Since Garcia is the master of her complaint, the Court will not interpret an ambiguous portion of the complaint in a manner that Garcia has shown she does not intend. Thus, the allegations of the March Incident will be construed as also describing sexual conduct.

Because a school district is not vicariously liable for the sexual misconduct of its teachers, dismissal of the assault and battery claims against CUSD under a *respondeat superior* theory is appropriate.[7] See John R, 48 Cal.3d at 447-52; Steven F., 112 Cal.App.4th at 909; Ortega, 64 Cal.App.4th at 1057.

### b. False Imprisonment

Garcia's false imprisonment cause of action is based on the November Incident. As such, it is based on allegations of sexual misconduct by a teacher. For the reasons described above, dismissal of this claim against CUSD under a *respondeat superior* theory is appropriate. See

---

[7]Garcia cites several cases for the proposition that a government entity may be vicariously liable for the conduct of its employees. However, as CUSD rightly points out, these cases either pre-date *John R.* or do not involve school districts.

John R, 48 Cal.3d at 447-52; Steven F., 112 Cal.App.4th at 909; Ortega, 64 Cal.App.4th at 1057.

        c.      Intentional Infliction of Emotional Distress

Garcia's intentional infliction of emotional distress cause of action is based on the November Incident, the March Incident, Burns's "staring and leering," and retaliation/harassment by other students. As discussed above, the November and March Incidents are incidents of sexual misconduct for which CUSD may not be held vicariously liable. See John R, 48 Cal.3d at 447-52; Steven F., 112 Cal.App.4th at 909; Ortega, 64 Cal.App.4th at 1057.

With respect to staring and leering, the Complaint alleges that, "From May 2008 to the end of the school year, Burns continued to stare and leer at Plaintiff 'from head to toe' and to laugh and snicker at her when he saw her while she was on campus." Complaint at ¶ 27. According to the Merriam Webster On-Line Dictionary, a "leer" is "a lascivious, knowing, or wanton look."[8] With the allegation that Burns was staring and leering at Garcia "from head to toe," the complaint is describing lustful/sexual misconduct by Burns. For the reasons described above, CUSD may not be held vicariously liable for this misconduct. See John R, 48 Cal.3d at 447-52; Steven F., 112 Cal.App.4th at 909; Ortega, 64 Cal.App.4th at 1057.

Finally, the allegations regarding harassment and retaliation by other students are conclusory, see Discussion infra., and do not provide sufficient facts regarding the nature of the harassment and retaliation. Because there are essentially no facts alleged, the allegations do not provide the necessary foundation of outrageousness that is required for a claim of intentional infliction of emotional distress.[9] See Christensen v. Superior Court, 54 Cal.3d 868, 903 (1991).

    2.    Ratification

"As an alternate theory to respondeat superior, an employer may be liable for an employee's act where the employer either authorized the tortious act or subsequently ratified an

---

[8]The Merriam Webster On-Line Dictionary defines "lascivious" as "lewd, lustful," and defines "wanton" as meaning "lewd . . . causing sexual excitement: lustful, sensual" or "merciless, inhumane . . . malicious."

[9]Garcia's argument that these four causes of action do not include a sex based element is not persuasive. It would seem that every act of sexual misconduct could be alleged to violate common law intentional torts such as assault and battery, which do not require as an element some "sexual aspect." To allow Garcia to maintain these causes of action would require the Court to ignore the alleged sexual nature of Burns's conduct and would eviscerate John R.'s holding.

15

originally unauthorized tort." <u>C.R. v. Tenet Healthcare Corp.</u>, 169 Cal.App.4th 1094, 1110 (2009); <u>Baptist v. Robinson</u>, 143 Cal.App.4th 151, 169-70 (2006). The California Supreme Court has explained:

> Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him. A purported agent's act may be adopted expressly or it may be adopted by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred, including conduct which is inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it.

<u>Rakestraw v. Rodrigues</u>, 8 Cal. 3d 67, 73 (1972); <u>Fretland v. County of Humboldt</u>, 69 Cal.App.4th 1478, 1491 (1999). "The theory of ratification is generally applied where an employer fails to investigate or respond to charges that an employee committed an intentional tort, such as assault or battery." <u>C.R.</u>, 169 Cal.App.4th at 1110; <u>Baptist</u>, 143 Cal.App.4th at 169-70. Retention of an employee after knowledge of the employee's conduct or an adequate opportunity to learn of the conduct may support an inference of ratification. <u>See Murillo v. Rite Stuff Foods, Inc.</u>, 65 Cal.App.4th 833, 852 (1998). In a case regarding the appropriateness of punitive damages, the California Supreme Court has stated:

> While it is undoubtedly true that a principal may ratify and approve the oppressive acts of an agent and that failure to discharge such agent may be evidence tending to show ratification, but the omission to dispense with the services of the offender, standing by itself and unsupported by any other circumstances indicating the employer's approval of his course, is never sufficient to establish ratification. By continuing the wrongdoer in his service after knowledge or opportunity to learn of the misconduct and by other acts, the principal may become an abettor of the oppression and may make himself liable in punitive damages.

<u>Edmunds v. Atchison, T. & S. F. R. Co.</u>, 174 Cal. 246, 249 (1917). Accordingly, "ratification may be inferred from the fact that the employer, after being informed of the employee's actions, does not fully investigate and fails to repudiate the employee's conduct by redressing the harm done and punishing or discharging the employee." <u>Roberts v. Ford Aero. & Communications Corp.</u>, 224 Cal.App.3d 793, 801 (1990); <u>Fisher v. San Pedro Peninsula Hospital</u>, 214 Cal.App.3d 590, 621 (1989); <u>see also Iverson v. Atlas Pacific Engineering</u>, 143 Cal.App.3d 219, 228 (1989) (holding that allegations that an employer failed to "criticize, censure, terminate, suspend or otherwise sanction or take any action against [the employee]" were sufficient to allege

ratification).

The Court has significant misgivings about the applicability of ratification to this case. First, ratification is a voluntary election to adopt another's conduct as one's own. See Rakestraw, 8 Cal.3d at 73. As discussed above, however, the Complaint's allegations affirmatively show that CUSD was not deliberately indifferent to Garcia's complaints. CUSD granted Garcia's request to be removed from Burns's classroom and CUSD later removed Burns from the classroom altogether after Garcia complained about the staring and leering. In other words, CUSD changed the status quo. See Roberts, 224 Cal.App.3d at 801; Fisher, 214 Cal.App.3d at 621; Iverson, 143 Cal.App.3d at 228. It is true that the Complaint indicates that CUSD did not terminate Burns. However, an employer need not always terminate an employee in order to avoid ratification. See, e.g., Fretland, 69 Cal.App.4th at 1491 (finding no ratification where employer issued a "letter of warning" to the employee); Sullivan v. Matt, 130 Cal.App.2d 134, 144 (1955) (finding no ratification where employer did not discharge an employee who had unique and necessary skills). By acting to change the circumstances facing Garcia (a form of redress) and by punishing Burns by removing him from his classroom duties, CUSD's alleged conduct is contrary to a voluntary adoption of Burns's conduct as its own. If CUSD had ratified Burns's conduct, it would not have taken steps to effectuate change or to punish Burns. The same actions by CUSD that show a lack of deliberate indifference also show a lack of ratification.

Second, Garcia cites no cases post-*John R.* that have applied ratification to hold a school district liable for the sexual misconduct of its teachers, and the Court itself has found none. It is true that *John R.* was expressly dealing with *respondeat superior* and did not address the theory of ratification. Significantly, while *John R.* did not allow *resondeat superior*, it did not foreclose all avenues of recovery against a school district for a teacher's sexual misconduct. Instead *John R.* held that a school district may be liable for its own conduct in negligently hiring, supervising, or retaining the teacher. See John R., 48 Cal.3d at 453. Ratification is an alternate theory to *respondeat superior*. See C.R., 169 Cal.App.4th at 1110; Baptist, 143 Cal.App.4th at 169-70. *John R.* did not identify any other alternate method of holding a school district liable for a

teacher's sexual misconduct.  See id.  Indeed, the court of appeals in *Steven F.* stated that "[t]he *only way* a school district may be held liable [for the sexual misbehavior of a teacher] must be premised on its own direct negligence in hiring and supervising the teacher."  Steven F., 112 Cal.App.4th at 909 (emphasis added).  At this point, it is unclear if ratification may be applied when the sexual misconduct of a teacher is involved.

The allegations of the complaint are inconsistent with ratification by CUSD, and Garcia has not adequately shown whether ratification is applicable under the circumstances of this case.  Accordingly, dismissal of Garcia's claims that are premised on ratification is appropriate.

## IV.    EIGHTH CAUSE OF ACTION
**(Negligence Per Se  – Violation of California Penal Code § 11166)**

*Defendant's Argument*

CUSD's liability under this section is vicarious and therefore dependent on the liability of the individual defendants.  Penal Code § 11166(a) requires certain individuals to report to specified agencies if they suspect that child abuse or neglect is occurring.  Garcia did not report the November and March Incidents until April 2008.  After April 1, 2008, no similar conduct occurred.  Garcia's complaint under § 11166 fails because the failure to report did not cause any injury to Garcia and any alleged injury suffered due to Burns's leering and telling his class that Garcia was suing him is not the type of serious injury that § 11166 was designed to prevent.

Alternatively, there was no duty to report any alleged child abuse because Garcia personally reported the November and March Incidents at the SARB meeting.  By statute, representatives from law enforcement agencies, county probation, and county welfare are required to attend SARB meetings.  These agencies are the agencies to which mandated reporters (as defined by Penal Code § 11165.9) are to make their reports.  A representative from the Fresno County Probation Department was present and Garcia cannot truthfully plead otherwise.  Since Plaintiff herself reported the conduct in the presence of a probation department representative, the individual defendants had no duty to make any further reports.

*Plaintiff's Opposition*

Garcia argues that the individual defendants are classified as "mandated reporters" under Penal Code § 11165.7. Under Penal Code § 11166, a mandated reporter must report suspected child abuse or neglect to certain specified agencies when they have knowledge of a child whom they know or reasonably suspect have been the victim of child abuse or neglect. "Child abuse or neglect" includes *inter alia* "the infliction of unjustifiable physical pain or mental suffering." See Cal. Pen. Code § 11165.3. After Garcia told the mandated reporters in April 2008, Burns leered and stared at Garcia, which constitutes maltreatment of a child and the willful infliction of unjustifiable mental suffering. Thus, had the mandated reporters reported Burns's conduct in April, an investigation would have ensued and Burns would not have inflicted mental suffering on Garcia from his leering.

With respect to a probation officer being present, a probation officer is only required to be present at a County SARB meeting, not a school district SARB. There is no allegation that this was a County SARB. Further, even if a probation officer was present, probation officers are mandated reporters and when multiple mandated reporters are aware of or reasonably suspect abuse, they are to designate a representative to make a report. No such report was made. Further, reporting to a probation department is appropriate only where a County has designated the probation department as an agency for receiving such reports. There is no indication that Fresno County has so designated.

*Discussion*

Under California law, "negligence per se" is an evidentiary doctrine that creates a presumption of negligence if the plaintiff shows four elements:

> (1) the defendant violated a statute, ordinance, or regulation; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.

Cal. Evid. Code § 669(a); Alcala v. Vazmar Corp., 167 Cal.App.4th 747, 755 (2008); Quiroz v. Seventh Ave. Center, 140 Cal.App.4th 1256, 1285 (2006). "Even if the four requirements . . . are

satisfied, this alone does not entitle a plaintiff to a presumption of negligence in the absence of an underlying negligence action." <u>Quiroz</u>, 140 Cal.App.4th at 1285.

Penal Code § 11166 provides in part, "a mandated reporter shall make a report to [a specified] agency . . . whenever the mandated reporter, in his or her professional capacity or within the scope of his or her employment, has knowledge of or observes a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect." Cal. Pen. Code § 11166(a). This Penal Code section is part of the "Child Abuse & Neglect Reporting Act" (California Penal Code §§ 11164-11174.3), the purpose of which "is to protect children from abuse and neglect." Cal. Pen. Code § 11164(b). "Child abuse and neglect" includes "the willful harming or injuring of a child or the endangering of a child or the health of a child," which in turn means "a situation in which any person willfully causes or permits any child to suffer, or inflicts thereon, unjustifiable physical pain or mental suffering . . . ." Cal. Pen. Code § 11165.3. It has been held that Penal Code § 11166(a) may form the basis of a negligence per se claim. <u>Alejo v. City of Alhambra</u>, 75 Cal.App.4th 1180, 1185-95 (1999).

Here, the second and third elements of the negligence per se presumption are challenged. <u>See</u> Court's Docket Doc. No. 12 at p.15. The basis for Garcia's injury is Burns's conduct after April 1, 2008, in which he "stared and leered" at Garcia "from head to toe" when Garcia was on campus.[10] <u>See</u> Complaint at ¶ 27. As stated above, "child abuse and neglect" includes situations in which a person inflicts unjustifiable mental suffering on a child. <u>See</u> Cal. Pen. Code § 11165.3. Garcia's allegations fit within this aspect of "child abuse and neglect:" staring and leering is willful conduct, Burns was aware that there was concern about his conduct towards Garcia, <u>see</u> Complaint at ¶ 25, and Garcia expressly alleged that Burns's leering and starring is part of the conduct that caused Garcia "severe emotional distress." <u>See</u> Complaint at ¶¶ 34, 52. It is not unexpected that a child would suffer mentally/emotionally from a teacher leering at her

---

[10]The complaint alleges that Burns's statements to the class (that he was leaving class because Garcia was suing him for hurrying her across the street) constituted abuse. Complaint at ¶¶ 29, 75. In her opposition, Garcia focuses on Burns's leering and does not discuss Burns's statement to his class. <u>See</u> Opposition at pp. 16-19. Since Garcia does not defend the allegation or incorporate it into her opposition, and since the Court has found any claim of harassment/retaliation to be inadequately pled, the Court will not address Burns's statement as an injury causing event for purposes of the Eighth Cause of Action.

in the circumstances alleged in the Complaint.[11]  Garcia is not required to go into minute detail in pleading her cause of action.  The complaint gives notice (and CUSD is clearly aware) of the claim and the claim's basis, and the factual allegations show that the claim is plausible – that is all that is required.  See Twombly, 125 S.Ct. at 1964-65, 1974; Weber, 521 F.3d at 1065; Sagana, 384 F.3d at 736.

CUSD has not sufficiently shown that Garcia's mental suffering is outside the scope of § 11166.  In the memorandum in support of its motion, CUSD points out other conduct within the definition of "abuse and neglect" to argue that Garcia's injury is not sufficiently severe.  However, CUSD does not discuss the definition of "mental suffering," cite cases that define the term, or point to any legislative history that discusses what might be meant by mental suffering.  For this motion, given the argument presented, the Court will not find that Garcia's mental suffering is outside the scope of § 11166.[12]

With respect to the potential presence of a representative from the Fresno Probation Department, the Court agrees with Garcia.  Probation officers must be present at County SARB meetings, but may be present at School District SARB meetings.  See Cal. Educ. Code §§ 48321(a)(2)(c), (b)(1)(c).  The complaint does not allege that the April 1 meeting was a County SARB meeting.  Nor does the complaint allege that Fresno County has designated the Probation Department as an agency to receive reports.  See Cal. Pen. Code § 11165.9.  Further, Garcia is correct that Penal Code § 11166(h) provides that, if a group of mandated reporters know or reasonably suspect abuse, then the group may select one person to make the report.  A probation officer is a mandated reporter.  See Cal. Pen. Code § 11165.7(15).  CUSD cites no law that excuses a mandated reporter from making a report if a probation officer also is a member of the group of mandated reporters.  Merely alleging that a SARB meeting occurred does not excuse the failure of the mandated-reporter-Defendants to make a report.

---

[11]Defendants do not argue that there is a distinction between mental suffering and severe emotional distress.

[12]CUSD tries to minimize the allegations of leering and Garcia's mental suffering.  At this stage of the proceedings, Garcia does not need to provide precise detail of the suffering or the leering.  This order only holds that Garcia has made sufficient allegations.  Whether the proof adduced at trial and/or summary judgment will be sufficient to support the claim is a different question.

Because the complaint alleges facts that show an injury (unjustifiable mental suffering) that falls within the definition of "child abuse or neglect," and because Garcia has not pled herself out of a cause of action by alleging that a SARB meeting occurred, dismissal is not appropriate.

## V. NINTH, TENTH, ELEVENTH CAUSES OF ACTION
### (Negligent Supervision, Negligent Training, and Negligent Hiring/Retention)

*Defendants' Argument*

CUSD argues that Garcia has not alleged sufficient facts, but instead is using the lawsuit as a fishing expedition. An employer is only liable for negligent hiring/retention, supervision, and training if it knows or has reason to believe that the employee is unfit or fails to use reasonable care in discovering whether the employee is fit. Garcia's complaint contains no facts that CUSD was negligent in hiring Bass, Burns, Cervantes, Jager or Moua, or that these individuals were unqualified or unable to perform their duties. The Complaint also fails to allege any facts that CUSD failed to provide these individuals with specific training or that CUSD knew or should have known of any prior misconduct, if any, of Burns. Further, as argued above, the Complaint shows that Garcia was not injured by the failure of Bass, Cervantes, Jager, and Moua to report Burns's conduct. These claims should be dismissed.

*Plainitff's Opposition*

Garcia argues that a school district has a duty under the California Education and Penal Codes to train its employees regarding sexual harassment and about their obligations under the Child Abuse and Neglect Reporting Act. Further, a school district may be held liable for its own negligence in hiring and retaining a person with known, suspected, or discoverable dangerous propensities. The Complaint alleges that CUSD was negligent when it breached its duty to train and supervise its employees under these statutes and that the breaches caused Garcia harm. The Complaint states valid causes of action.

*Discussion*

*a.     Negligent Supervision*

In the complaint, Garcia alleges in relevant part: "CUSD negligently supervised Burns,

22

Jager, Bass, Cervantes, Moua . . . by failing to ensure that they properly performed their duties required by Penal Code § 11166 [and] Education Code § 200 et seq., regarding sexual harassment and CUSD Board Policies regarding prevention of sexual harassment." Complaint at ¶ 82. Garcia also incorporates by reference paragraphs concerning Garcia's damages and the events of November 2007 through May/June 2008 and alleges that the failure to supervise was a substantial factor in causing her harm. See id. at ¶¶ 80, 83.

"[T]here can be no liability for negligent supervision in the absence of knowledge by the principal that the agent or servant was a person who could not be trusted to act properly without being supervised." Juarez v. Boy Scouts of Am., 81 Cal.App.4th 377, 395 (2000) (quoting Noble v. Sears, Roebuck & Co., 33 Cal.App.3d 654, 664 (1973)). The Complaint makes no allegations that show CUSD had knowledge that Bass, Cervantes, Jager, and Moua could not be trusted without supervision. Accordingly, Garcia has not sufficiently alleged a plausible claim for negligent supervision under California law as to Bass, Cervantes, Jager, and Moua. See Twombly, 127 S. Ct. at 1964-65, 1974; Weber, 521 F.3d at 1065; Navarro, 250 F.3d at 732; Juarez, 81 Cal.App.4th at 395.

With respect to Burns, the Complaint fails to allege that CUSD had knowledge prior to April 2008 that Burns required supervision.[13] Thus, for Burns's conduct occurring before April 2008, Garcia has not alleged a plausible claim of negligent supervision. See Juarez, 81 Cal.App.4th at 395. However, after April 1, 2008, CUSD was on notice of Burns's conduct, specifically the November and March Incidents, because at least Bass[14] was informed of the conduct at that time.[15] Garcia was removed from Burns's class as a result of informing Bass and requesting to be removed. Nevertheless, no additional supervision of Burns is alleged to have occurred and after Garcia was removed from Burns's class, Burns allegedly stared and leered at

---

[13]The Complaint does allege that Garcia told the Eighth Grade secretary about the November Incident, but Garcia does not mention this in her opposition. In the absence of argument regarding the significance of informing the secretary, and because dismissal of this cause of action will be with leave to amend, the Court will assume that informing the secretary did not constitute knowledge by CUSD for purposes of this order.

[14]Again, Bass is alleged to have had sufficient authority to take corrective measures. See Complaint at ¶ 95.

[15]The principal of the school, Jager, appears to have learned of the conduct at the latest on April 11, 2008. See Complaint at ¶¶ 21-24.

Garcia from head to toe, which allegedly caused her severe emotional distress. <u>See</u> Complaint at ¶¶ 25-28, 34, 52. Garcia further alleges that the failure to supervise was a substantial factor in causing her harm. <u>See id.</u> at ¶ 83. These allegations are sufficient to state a plausible cause of action for the negligent supervision of Burns from April 2008 forward.

Because the Complaint does not sufficiently allege that CUSD had knowledge of a need to supervise Burns prior to April 1, 2008, or any need to supervise Bass, Cervantes, Jager, or Moua, the Complaint does not allege a plausible claim for negligent supervision and dismissal is appropriate. <u>See Twombly</u>, 127 S. Ct. at 1964-65, 1974; <u>Weber</u>, 521 F.3d at 1065; <u>Navarro</u>, 250 F.3d at 732; <u>Juarez</u>, 81 Cal.App.4th at 395. However, with respect to supervision of Burns after April 1, 2008, the complaint gives notice of the claim and the claim's basis, and the factual allegations show that the claim is plausible; thus, dismissal is not appropriate. <u>See Twombly</u>, 125 S.Ct. at 1964-65, 1974; <u>Weber</u>, 521 F.3d at 1065; <u>Sagana</u>, 384 F.3d at 736.

### *b.     Negligent Training*

In the complaint, Garcia alleges in relevant part: "CUSD negligently trained Burns, Jager, Bass, Cervantes, Moua . . . by failing to ensure that they were properly trained to perform the duties required by Penal Code § 11166 [and] Education Code § 200 et seq., regarding prevention of sexual harassment and CUSD Policies regarding prevention of sexual harassment." Complaint at ¶ 86. Garcia also incorporates by reference paragraphs concerning Garcia's damages and the events of November 2007 through May/June 2008 and alleges that the failure to train was a substantial factor in causing her harm. <u>See id.</u> at ¶¶ 84, 87.

A plaintiff alleging negligent training under California law must show that the employer negligently trained the employee as to the performance of the employee's job duties and as a result of such negligent instruction, the employee while carrying out his job duties caused injury or damage to the plaintiff. <u>See State Farm Fire & Casualty Co. v. Keenan</u>, 171 Cal.App.3d 1, 23 (1985).

Garcia has sufficiently alleged a cause of action for negligent training. She has alleged that CUSD did not adequately train Burns, Bass, Cervantes, Jager, and Moua regarding their duties under the Penal Code, the Education Code, and CUSD policies. Those allegations are

supported by allegations that there were questions about whether it was appropriate for Garcia to relate the November and March Incidents at the April 1 meeting and no one at the meeting (or later Jager) made a mandated report, and Burns began staring and leering at Garcia from head to toe which caused her severe emotional distress.  See Complaint at ¶¶ 20-28, 34, 52.  These allegations give notice of the claim and the claim's basis, and the factual allegations show that the claim is plausible; thus,  dismissal is not appropriate.  See Twombly, 125 S.Ct. at 1964-65, 1974; Weber, 521 F.3d at 1065; Sagana, 384 F.3d at 736.

### c.    Negligent Hiring/Retention

In the complaint, Garcia alleges in relevant part: "CUSD negligently hired and retained Burns, Jager, Bass, Cervantes, Moua . . . by failing to ascertain when they were hired whether they could properly perform their duties required by Penal Code § 11166 [and] Education Code § 200 et seq., regarding prevention of sexual harassment, and CUSD Board Policies regarding prevention of sexual harassment and by failing to ascertain during the course of their employment that they were capable of and willing to perform said duties."  Complaint at ¶ 90.  Garcia also incorporates by reference paragraphs concerning Garcia's damages and the events of November 2007 through May/June 2008 and alleges that CUSD's conduct was a substantial factor in causing her harm.  See id. at ¶¶ 88, 91.

"In California, an employer can be held liable for negligent hiring if he knows the employee is unfit, or has reason to believe the employee is unfit or fails to use reasonable care to discover the employee's unfitness before hiring him."  Juarez, 81 Cal.App.4th at 395; Evan F. v. Hughson United Methodist Church, 8 Cal.App.4th 828, 843 (1992); see also Virginia G. v. ABC Unified Sch. Dist., 15 Cal.App.4th 1848, 1855 (1993).  Liability for negligent hiring/retention occurs when the employer knew or should have known that hiring or retaining the employee created a particular risk or hazard and that particular harm materializes.  See Doe v. Capital Records, 50 Cal.App.4th 1038, 1054 (1996).

Garcia has not adequately alleged a negligent hiring/retention claim.  Of the three methods of showing negligent hiring/retention, the Court reads the Complaint as attempting to

allege only the third method of negligent hiring/retention:  failure to use reasonable care to discover an employee's unfitness.  However, Garcia alleges only that CUSD failed to ascertain whether its employees were able and willing to follow California law, she does not allege that CUSD failed to use reasonable care in ascertaining the employees' fitness.  Negligent hiring/retention is not strict liability, and failing to actually ascertain is not the same as failing to use reasonable care to ascertain.  If CUSD behaved reasonably in its attempts to discover the fitness of its employees, then CUSD did not negligently hire/retain.  Because the Complaint does not allege that CUSD failed to use reasonable care to discover the unfitness of its employees, Garcia has not adequately pled her cause of action and dismissal is appropriate.  See Navarro, 250 F.3d at 732.

## VI.  FIFTH CAUSE OF ACTION
### (Violation of California Civil Code § 51.9)

*Defendants' Argument*

CUSD argues that under *Donovan*, Civil Code § 51.9 may be interpreted through reference to cases interpreting Title IX.  CUSD argues that it can only be liable if it responded with deliberate indifference, and the Complaint shows that it did not act with deliberate indifference.

*Plaintiff's Opposition*

Citing *Hughes v. Pair*, 154 Cal.App.4th 1469 (2007), Garcia argues that Title VII and FEHA standards are used under § 51.9.  Contrary to CUSD's argument, various courts have held that, under some circumstances, staring may constitute sexual harassment.[16]  The Complaint alleges that the November and March Incidents combined with Burns's staring and leering created an objectively severe and pervasive environment.  Because Burns was always on campus, Garcia could not easily avoid him.  As a result of Burns's conduct, Garcia alleges that she was deprived educational benefits and opportunities and experienced mental suffering.  These allegations sufficiently show actionable sexual harassment.

---

[16]Garcia is correct in this assertion.  See Birchstein v. New United Motor Manufacturing, Inc., 92 Cal.App.4th 994, 1001-02 (2001).

1      *Discussion*

2          If a Court properly has supplemental jurisdiction over a claim under 28 U.S.C. § 1367,

3      "section 1367(c) provides the only valid basis upon which the district court may decline

4      jurisdiction and remand pendent claims." Executive Software N. Am. v. United States Dist.

5      Court, 24 F.3d 1545, 1551 (9th Cir. 1994).[17]  District courts have the discretion to "decline to

6      exercise supplemental jurisdiction over a claim if the claim raises a novel or complex issue of

7      State law." 28 U.S.C. § 1367(c)(1).  The Ninth Circuit has found it proper to decline to exercise

8      supplemental jurisdiction under 28 U.S.C. § 1367(c)(1) in situations where the scope of a state

9      legislative enactment is unknown, see Lovell by & Through Lovell v. Poway Unified Sch. Dist.,

10     90 F.3d 367, 374 (9th Cir. 1996), or when the application of a state statute is a question of first

11     impression.  See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 927 (9th Cir. 2001).

12         This Court has jurisdiction of Garcia's California Civil Code § 51.9 claim through

13     supplemental jurisdiction.  After considering the arguments of the parties, the Court will decline

14     to exercise supplemental jurisdiction over this claim.  First, the California Supreme Court

15     granted review of the *Hughes* case, which means that *Hughes* is no longer precedential. See

16     Hughes v. Pair, 171 P.3d 545 (Cal. 2007).  It appears that the California Supreme Court will

17     determine how § 51.9 should be construed, i.e. should it be construed in reference to sexual

18     harassment claims under Title VII and FEHA.  See Hughes v. Pair, 2008 CA S. Ct. Briefs LEXIS

19     848, *2 (Feb. 8, 2008).[18]  There is therefore an open and literally pending question regarding the

20     interpretation and meaning of § 51.9.  Second, § 51.9 prohibits sexual harassment in the context

21     of business, service, and professional relationships.  See Cal. Civ. Code § 51.9(a).  As an

22     example of the types of business, service, and professional relationships that are intended to be

23     covered, the California Legislature included "Teacher."  See Cal. Civ. Code § 51.9(a)(1)(E).

24     However, the Court has found no California state court cases that have dealt with, interpreted, or

25     construed § 51.9(a)(1)(E).  Significantly, in light of *Donovan*, it is not clear how a § 51.9(a)

26     ──────────

27         [17]Overruled on other grounds, California Dep't of Water Res. v. Powerex Corp., 533 F.3d 1087 (9th Cir.
       2008).

28         [18]See
       http://appellatecases.courtinfo.ca.gov/search/case/mainCaseScreen.cfm?dist=0&doc_id=495529&doc_no=S157197.

claim should be construed in a case such this one.  *Donovan* did not cite § 51.9, but recognized a cause of action for sexual harassment under California Education Code § 220 and held that Title IX jurisprudence as described in *Gebser* and *Davis* should be utilized in interpreting § 220.  See *Donovan*, 167 Cal.App.4th at 605.  This raises questions of overlap between Education Code § 220 (as well as § 212.5) and Civil Code § 51.9 and how these sections interrelate.[19]  It further raises questions (which CUSD has raised) about whether Title IX jurisprudence should be read into a claim under Civil Code § 51.9 when that claim is against a "teacher" or school district.  In other words, is actual knowledge and deliberate indifference necessary under a § 51.9 claim when a teacher or school district is involved?  *Hughes* involved a claim against a trustee of an estate, it did not involve either a teacher or school district.  See *Hughes*, 154 Cal.App.4th at 1474, 1480.  Thus, interpretations of Civil Code § 51.9(a)(1)(E), Education Code §§ 212.5 and 220, and Title IX will not be within the scope of the California Supreme Court's review.

In light of these considerations, the Court finds that this claim raises novel questions of state law that are better left for the state court system to resolve and declines to exercise supplemental jurisdiction.  See 28 U.S.C. § 1367(c)(1); Arpin, 261 F.3d at 927; Lovell, 90 F.3d at 374.  The Court will remand Garcia's § 51.9 cause of action to the Fresno Superior Court.  See Cal. ex rel. Lockyer v. County of Santa Cruz, 416 F.Supp.2d 797, 801 (N.D. Cal. 2006); Roe v. City of Milwaukee, 26 F.Supp.2d 1119, 1124 (E.D. Wis. 1998).

**VII.     FOURTEENTH CAUSE OF ACTION**
**            (42 U.S.C. § 1983 against CUSD)**

Garcia concedes that she cannot state a cognizable claim against CUSD under 42 U.S.C. § 1983.  In light of this concession, this claim is dismissed without leave to amend.

**CONCLUSION**

CUSD moves for dismissal of all claims against it on numerous grounds.  With respect to the Sixth and Twelfth causes of action (Title IX and California Education Code § 201(c)/212.5)

---

[19]The Court notes that Education Code § 201(f) indicates that the California legislature intended the relevant Education Code sections to be interpreted consistently with Title IX and the Unruh Civil Rights act.

28

based on teacher-on-student harassment, Garcia has alleged facts that affirmatively show that CUSD was not deliberately indifferent to her complaints. Garcia was removed from Burns's class as requested and later Burns was removed from his classroom duties altogether. For student-on-student harassment, Garcia has only alleged a bare conclusion that she was harassed and retaliated against by students. The claim is void of factual support. For the reasons discussed above, dismissal of these causes of action with leave to amend is appropriate.

With respect to Garcia's Seventh cause of action (California Education Code § 201(f)/212.5) for "failure to prevent," Garcia has failed to state a claim because there are no allegations that CUSD has adopted an institutional policy of indifference. Dismissal is appropriate.

With respect to Garcia's First, Second, Third, and Fourth causes of action (assault, battery, false imprisonment, and intentional infliction of emotional distress), Garcia's allegations show that she is complaining about sexual misconduct by Burns. To the extent that Garcia relies on the doctrine of *respondeat superior* to hold CUSD liable, such a theory is improper under *John R.* and dismissal is appropriate. *John R.* acts as a bar to this theory and these claims, so dismissal will be without leave to amend. To the extent that Garcia attempts to hold CUSD liable under a theory of ratification, it is not entirely clear if *John R.* would also bar such a theory. Nevertheless, the same conduct by CUSD that negates deliberate indifference for Title IX liability also negates ratification. CUSD took steps to address Garcia's complaints and to change the status quo, which is inconsistent with the notion that CUSD adopted Burns's conduct as its own. Dismissal of these claims under a ratification theory will be with leave to amend.

With respect to Garcia's Eighth cause of action (negligence per se), Garcia has alleged that she suffered severe emotional distress as a result of Burns's leering. CUSD has not sufficiently shown that the type of injury suffered by Garcia is outside the scope of Penal Code § 11166. Dismissal is not appropriate.

With respect to Garcia's Ninth cause of action (negligent supervision), Garcia has not alleged that CUSD knew that Bass, Cervantes, Jager, or Moua needed supervision. The same is true of Burns prior to April 2008. After April 2008, however, CUSD was on notice that Burns

had engaged in improper conduct and may require further supervision. Accordingly, dismissal is appropriate except for supervision of Burns after April 1, 2008.

With respect to Garcia's Tenth cause of action (negligent training), Garcia has sufficiently alleged that CUSD did not take steps to ensure that Bass, Burns, Cervantes, Jager, and Moua were adequately trained regarding Penal Code § 11166. Dismissal is not appropriate.

With respect to Garcia's Eleventh cause of action (negligent hiring/retention), Garcia has failed to adequately allege that CUSD took unreasonable steps to investigate Bass, Burns, Cervantes, Jager, and Moua. Dismissal is appropriate.

With respect to Garcia's Fourteenth cause of action (42 U.S.C. § 1983), in light of Garcia's acknowledgment that she cannot state a cognizable claim, dismissal is appropriate.

Finally, with respect to the Fifth cause of action (California Civil Code § 51.9), the Court finds that this claim raises novel questions of state law and declines to exercise supplemental jurisdiction. The Court instead will remand this claim to the Fresno County Superior Court.


Accordingly, IT IS HEREBY ORDERED that CUSD's Rule 12(b)(6) motion to dismiss:

1. The First, Second, Third, and Fourth claims under a *respondeat superior* theory is GRANTED and the claims are DISMISSED without leave to amend;

2. The First, Second, Third, and Fourth claims under a ratification theory is GRANTED and the claims are DISMISSED with leave to amend;

3. The Fifth claim is DENIED;

4. The Sixth claim is GRANTED with leave to amend;

5. The Seventh claim is GRANTED with leave amend;

6. The Eighth claim is DENIED;

7. The Ninth claim is GRANTED (except for Burns's conduct post-April 1, 2008) with leave to amend;

8. The Tenth claim is DENIED;

9. The Eleventh claim is GRANTED with leave to amend;

10. The Twelfth claim is GRANTED with leave to amend;

11. The Fourteenth claim is GRANED without leave to amend;

12. Plaintiff may file an amended complaint consistent with this order and Rule of Civil Procedure 11 within twenty (20) days of service of this order; and

13. Plaintiff's Fifth claim is remanded to the Fresno Superior Court and the Clerk shall send notice of this order to the Fresno Superior Court as provided by 28 U.S.C. § 1447(c).


IT IS SO ORDERED.

**Dated:    April 15, 2009**                         **/s/ Anthony W. Ishii**
                                        CHIEF UNITED STATES DISTRICT JUDGE