1
2
3
4
5

## IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KRISTA GARCIA, by and through her guardian ad litem Lorraine Marin,** ) ) | **1:08-CV-1924  AWI SMS** |
| ) | **ORDER ON DEFENDANTS'** |
| **Plaintiff,** ) | **MOTION TO DISMISS** |
| ) | **PLAINTIFF'S FIRST** |
| **v.** ) | **AMENDED COMPLAINT** |
| ) | |
| **CLOVIS UNIFIED SCHOOL** ) | |
| **DISTRICT, DOUGLAS BURNS, BARRY** ) | |
| **JAGER, GREG BASS, ANN-MAURA** ) | |
| **CERVANTES, MAI YIA MOUA, and** ) | |
| **DOES 1 through 20, inclusive,** ) | (Doc. Nos. 38, 39) |
| ) | |
| **Defendants.** ) | |
| ) | |
| _____ ) | |

This case was removed from the Fresno County Superior Court on the basis of federal question jurisdiction.  Plaintiff Krista Garcia ("Garcia"), through her guardian ad litem, alleges numerous causes of action against Clovis Unified School District ("CUSD") and its employees Douglas Burns ("Burns"), Barry Jager ("Jager"), Greg Bass ("Bass"), Ann-Maura Cervantes ("Cervantes"), and Mai Yia Moua ("Moua").  Garcia's claims stem from conduct by her former teacher Burns and CUSD's reaction to Burns's conduct.  On April 16, 2009, the Court issued an order that granted in part and denied in part CUSD's motion to dismiss.  See Court's Docket Doc. No. 35 (hereinafter "Prior Order").  On May 6, 2009, Garcia filed a first amended complaint ("FAC").  CUSD has now filed motions under Rules 12(b)(6), 12(e), and 12(f).  For the reasons that follow, CUSD's motions will be granted in part and denied in part.

**BACKGROUND**

From the FAC,[1] during the 2007-2008 school year:  Garcia was a student at Reyburn Middle School ("the School"), Jager was the principal of the School, Moua was the eighth grade guidance counselor at the School, Burns was a teacher (apparently math) at the School, and Bass and Cervantes were employees of CUSD.  See FAC at ¶ 11.

In early November 2007 (hereinafter "the November Incident"), during Burns's math class, Garcia was walking back to her chair when she was approached from behind by Burns.  See id. at ¶ 12.  Burns lifted Garcia upside down and completely off the ground.  See id.  "Burns held Garcia, including on or about her buttocks, 'feeling her,' positioning her head directly in his groin area and proceeded to shake her up and down several times, in front of the entire class."  Id.  After Burns put her down, Garcia put her head down until class was over.  See id. at ¶ 13.  Garcia's classmates encouraged her to report the incident "to the office."  Id.  Garcia then immediately went to "the office" and reported the incident to "an administrator/assistant," believed to be the eighth grade secretary.  See id.  The secretary stated that she would contact Garcia's mother and report the matter to other personnel; she then instructed Garcia to return to class.  See id.  Garcia did not tell her mother about this incident until April 2008, and CUSD never contacted Garcia's mother to advise of or discuss this incident.  See id. at ¶ 14.  Garcia remained enrolled in Burns's math class until April 1, 2008.  See id. at ¶ 20.

Apparently no further incidents occurred until March 2008 (hereinafter "the March Incident").  Garcia was waiting outside on School grounds for her mother to pick her up from classes.  See id. at ¶ 15.  Garcia was waiting with her brother and some of his friends, who were also students at the School.  See id.  Burns approached the group and had a crossing sign in his hand.  See id. at ¶ 16.  Burns spoke to Garcia about seeing her in class and then, as he turned to walk away, he deliberately turned and "forcefully struck" Garcia with the sign on her buttocks.[2]

---

[1]Since this is a Rule 12(b)(6) motion, the Court accepts as true the factual allegations in the complaint.  See Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999).

[2]Garcia alleges that this conduct constituted corporal punishment in violation of California Education Code § 49001.  See FAC at ¶ 16.

1   See id. Burns then left, but laughed out loud as he walked away. See id. Garcia was scared and

2   confused, and her brother pulled her next to him. See id. at ¶ 17. Garcia did not tell her mother

3   about this incident until April 2008. See id. Although she remained in Burns's class until April

4   1, 2008, Garcia tried to avoid Burns because she felt fearful and humiliated. See id.

5       On April 1, 2008, Garcia attended a school attendance review board ("SARB") meeting at

6   the CUSD office. See id. at ¶ 18. Garcia, her mother, Bass, Cervantes, Moua, and "others" were

7   present at this meeting. See id. During the meeting, Garcia and her mother informed CUSD

8   personnel about the November and March Incidents. See id. Garcia broke down and cried and

9   gave a brief account of the November and March Incidents with Burns. See id. at ¶ 19. An

10  unidentified administrator stated, in essence, that the meeting was not the time or place to discuss

11  the Incidents. See id. Unidentified defendants then attempted to stop Garcia from providing or

12  reporting further information about the incidents. See id. A counselor, believed to be Bass,

13  stated that it was the appropriate time and place. See id. After more discussion, the unidentified

14  administrator tried to prevent further reporting and again stated that this was not the time or place

15  to discuss such matters. See id. Garcia's mother attempted to get specifics as to whom she

16  needed to contact and when was the proper time to discuss the Incidents. See id. She was told to

17  schedule a meeting with Jager.[3] See id. Garcia requested to be removed from Burns's classroom

18  and "was moved at this time."[4] Id. at ¶ 20.

19      From April 2 through April 11, 2008, Garcia's mother attempted to schedule a meeting

20  with Jager. See id. at ¶ 21. On April 11, 2008, Jager and Garcia's mother met. See id. at ¶ 22.

21  Jager stated that he was very concerned, that he and CUSD considered the reports by Garcia to be

22  very serious, and that the matter was being dealt with appropriately. See id. Jager also told

23  Garcia's mother that she would likely hear from other individuals and/or agencies in the near

24

25      [3]Paragraph 19, as well as Paragraph 24, both essentially allege that no action was taken against Burns in
26  reference to the November and March Incidents. See FAC at ¶¶ 19, 24. However, the FAC itself shows that CUSD
    issued a formal Notice of Unprofessional Conduct. See id. at ¶ 37-38. Paragraphs 19 and 24 are contrary to
27  paragraphs 37 and 38.

28      [4]Additionally, on April 1, 2008, Garcia filled out a complaint in which she described the March Incident.
    See FAC at ¶ 34; Defendant's Exhibit C.

future, including law enforcement.  See id.

On information and belief, Jager entered Burns's classroom and had a conversation with him about the March Incident.  See id. at ¶ 23.  Other children reported to Garcia that Burns told Jager that Burns was in the cross walk and "used the sign to 'hurry' [Garcia] out of the street." Id.

CUSD investigated the March Incident and obtained written statements from Garcia and her brother.  See id. at ¶ 25.  Garcia and her brother wrote that Burns came up to Garcia, Burns smacked her on the buttocks with the stop sign, and that Garcia was very upset.  See id.  By e-mail dated April 9, 2008, Jager wrote to another CUSD administrator:

> I have a unique situation to run past you and get your advice.  I have a student claiming that a teacher 'smacked her on the butt with a stop sign,' the one used for crossing the street.  Please advise.  Should this be looked into by our campus officer?  I don't want to overlook this issue and the fact that they brought this to our attention two months after it apparently happened according to the girl and her . . . brother.

Id. at ¶ 26.  Burns was also asked to give a statement.  Burns wrote:

> I walked into the crosswalk to stop traffic and to allow students to cross. [Garcia] stopped in the middle of the crosswalk to visit and would not move quick enough as the cars started to backup, so I told [Garcia] to hurry-up and I patted her from the back with a stop sign (she had her backpack on her back) to try and make her walk faster and to get out of the road. [She] and her brother walked across the street on the way to class.

Id. at ¶ 27.  By e-mail dated April 11, 2008, Jager wrote to Bass and Cervantes:

> I just want to touch base with you as to the next step in this process of her complaint.  I do have statements from the student and her brother.  I will have one from the teacher too.  Just wanted to make sure I follow through completely.  Please advise as to my next step.  I am meeting with Terrant this morning and will be sure to update the two of you.

Id. at ¶ 28.  By e-mail dated April 16, 2008, Jager wrote: "I have her statement, brother's statement, and the teacher's statement.  I met with the mom on Friday and she was pleased that we are doing what we are doing.  Student was [sic] working mom.  I just don't want to let anything fall through the cracks.  Advise?"  Defendants' Exhibit A.[5]  By e-mails dated April 17,

---

[5]Garcia and CUSD have both submitted exhibits in connection with the motion to dismiss.  With some exceptions, the parties have not objected to the Court considering these exhibits.  Without converting the motion into one for summary judgment, a court may consider external documents in deciding a motion to dismiss if the documents are "incorporated by reference" in the complaint.  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir.

2008, Jager asked Cervantes, "Do you feel that the teacher should not have done that?" FAC at ¶ 29. Jager then e-mailed, "It was wrong and it was addressed internally. The information given would not indicate harassment. I just don't want this to back fire if we don't follow through. I would appreciate your advice and guidance. Mom was actually very thankful I met with her Friday." Defendants' Exhibit A; see FAC at ¶ 29. Cervantes responded, "Sounds like its over - good work." Id. Burns continued to teach math class until May 2008. See id. at ¶ 30.

From May 2008, to the end of the school year, Burns continued to stare and leer at Garcia "from head to toe" and to laugh and snicker at her when he saw her on campus. Id. at ¶ 31. Although Garcia tried to avoid Burns, she could not do so. See id. Garcia continued to suffer severe emotional distress as a result of Burns' conduct. See id. Garcia's mother contacted CUSD, including Jager and Cervantes, and requested counseling for Garcia. See id. at ¶ 31.

Garcia's mother retained counsel and counsel wrote to CUSD's superintendent on May 15, 2008, to advise of what had occurred. See id. at ¶ 32. Thereafter, on May 16, 2008, and as a result of the letter, CUSD removed Burns from the classroom and CUSD initiated an investigation of Burns's conduct. See id.; Plaintiff's Exhibit 3. On May 16, 2008, CUSD sent a letter to Burns that informed Burns that he was placed on administrative leave with pay pending an investigation into allegations of his misconduct. See Plaintiff's Exhibit 3. The letter states that placement on administrative leave is not intended as a punishment or a reflection of any determination of the merits of the allegations against Burns. See id. The letter also directed Burns to remain off of CUSD property and to not return to his place of employment until authorized to return by CUSD. See id. The letter concludes by stating that it will be placed in Burns's personnel file and that Burns has the right to respond to the letter. See id.

On information and belief, Burns addressed his students prior to leaving his classroom. See id. at ¶ 29. Burns told his students that he was leaving because Garcia was suing him for hurrying her across the street with a crossing sign. See id. "Thereafter, students in the class

2005). When the Court identifies or discusses an exhibit in this order, it does so under the incorporation by reference doctrine as explained in *Knievel*. If the Court does not mention a submitted exhibit, then the Court did not consider the exhibit in ruling on this motion.

1  taunted, harassed and retaliated against [Garcia]."  Id.  CUSD permitted Burns to return to his

2  classroom and speak in an inflammatory fashion to his students, encouraging those students to

3  retaliate against Garcia because of her complaints against Burns.  See id. at ¶ 42.

4        By letter dated September 3, 2008, CUSD notified Garcia's mother regarding their

5  investigation.  See id. at ¶ 34; Defendants' Exhibit B.  The letter described the following

6  findings: (1) witnesses confirmed that Burns picked Garcia up, the witnesses denied that he held

7  her by the buttocks or with her face in his groin, and that witnesses reported that both Burns and

8  Garcia were laughing during the incident; (2) Ms. Wood (the eighth grade secretary) stated that

9  Garcia never reported the November Incident to her, and the first time CUSD learned of the

10  November Incident was from Garcia's counsel's letter of May 15, 2008; (3) witnesses provided

11  conflicting statements about where on Garcia's body that Burns struck her with the stop sign; (4)

12  at the SARB meeting, Garcia stated that she had been grabbed but did not identify who touched

13  her or how she was touched, the form Garcia completed stated that Burns struck her in the

14  buttocks, and School personnel found conflicting stories; (5) Burns denied staring and leering at

15  Garcia, and when CUSD received counsel's May 15 letter, Burns was immediately placed on

16  administrative leave and had no further contact with Garcia; and (6) the investigation did not

17  substantiate Garcia's allegation that she was harassed by students after Burns was placed on

18  administrative leave.  See id.  The letter concluded that there was insufficient evidence to find

19  that Burns had sexually harassed, assaulted, battered, falsely imprisoned, or intentionally inflicted

20  emotional distress against Garcia.[6]  See id.

21        On September 5, 2009, CUSD sent a similar letter to Burns regarding the investigation.

22  See FAC at ¶ 36; Plaintiff's Exhibit 5.  The letter identifies three allegations concerning Garcia:

23  the November Incident, the March Incident, and staring and leering.[7]  See id.  The letter

24

25      [6]The letter also explained that the investigation continued into the summer because the allegations from
   counsel arose at the end of the school year and there were difficulties locating witnesses due to only partial

26  identification by Garcia.  See Defendants' Exhibit B.

27      [7]The letter also identifies an allegation regarding a different student – Burns touched student ABC on the
   bare skin of her upper breast.  See Plaintiff's Exhibit 5.  This allegation apparently was brought to CUSD's attention

28  through the May 15 letter from Garcia's attorney.  In the letter, Garcia's counsel states that ABC told Garcia that
   Burns had touched the flesh of ABC's breast.  See Defendants' Exhibit F.

summarized its findings: (1) witnesses confirmed that Burns picked Garcia up and held her

upside down in class, witnesses denied that he held her by the buttocks or with her face in his

groin, and witnesses reported that both Burns and Garcia were laughing during the incident; (2)

witnesses provided conflicting statements about where on Garcia's body that Burns struck her

with the stop sign, but the investigation confirmed that Burns touched Garcia with the stop sign;

and (3) the investigation did not substantiate that Burns stared or leered at Garcia since Burns

was on administrative leave after May 16 and was not on campus and thus, could not have stared

or leered after this date.[8]  See id.  The letter concluded that there was insufficient evidence to find

that Burns had sexually harassed Garcia (or ABC), but that CUSD was concerned about Burns's

decision-making and judgment surrounding the incidents.  See id.

On September 12, 2008, Burns received a Notice of Unprofessional Conduct.  See FAC

at ¶¶ 37-38; Plaintiff's Exhibit 6.  In pertinent part, the notice provides:

> Pursuant to [statutes],[9] this letter constitutes notice of and directive to correct your
> unprofessional conduct.  Under these statutes, the District is required to provide a
> permanent certificated employee with such notice at least forty-five (45) days
> prior to initiating disciplinary proceedings for dismissal and/or suspension on the
> grounds of unprofessional conduct.
> . . . .
>
> This formal notice is designed to provide you with sufficient information to
> understand the nature of your unprofessional conduct.  Further, this notice is to
> illustrate to you specific instances of such behavior with such particularity as to
> provide you with an opportunity to correct these faults and overcome the grounds
> for discipline based on unprofessional conduct.
>
> Your unprofessional conduct is based more specifically on the following:
>
> 1.   In or about November 2007, during class, you picked up a female
>       student, held her upside down facing away from you, and shook
>       her up and down.  Although both you and the student were
>       laughing during this incident, it was very unprofessional to engage
>       in such conduct with students.
> 2.   In or about January 2008, using your finger, you touched a female
>       student on the shirt above her breast area. Although you have

---

[8]As to the Fourth allegation, the investigation did not substantiate that Burns touched ABC on the bare skin of her upper breast, but there was conflicting information whether Burns touched her shirt above the breast.  See Plaintiff's Exhibit 5.

[9]The statutes are California Education Code sections 44932 (which identifies eleven grounds for dismissing a permanent employee) and 44948 (which discusses notices that a school board must give in relation to unprofessional conduct).

denied this incident, both the student and another witness confirmed the incident occurred.

3.    In or about March 2008, you used a hand-held stop sign to tap a student either on the back or buttocks as she crossed a crosswalk. Accounts of the incident vary, but you acknowledged tapping the student on the back.  This was the same student whom you picked up in November 2007.  Again, such conduct is inappropriate and unprofessional.

The above described actions constitute unprofessional conduct on your part as a [CUSD] employee/teacher.  Within the next 45-days, you are directed to eliminate this unprofessional conduct.  In an effort to assist you in overcoming these deficiencies, you will be expected to comply with the following directives:

1.    Cease picking up students.  You should not pick up a student unless it is necessary to avoid harm or injury to the student.

2.    Do not hit, tap, or touch students with any object.  Use verbal directives with students.  Do not use objects, including stop signs, to move them or in an effort to make them follow your directions.

3.    Review [CUSD] Regulation No. 2111 concerning sexual harassment.  Although an investigation of your misconduct did not substantiate allegations of sexual harassment, you should review the policy to understand how your actions may be viewed by others.

4.    Conduct yourself in a professional manner in your interactions with students.  Use good judgment when exercising your authority.  It is not appropriate to physically pick up a student, touch students on their clothing, or to use a stop sign or other object to make a student follow your directions.  Treat all students with respect and courtesy.

In sum, your above noted performance has been unprofessional.  At the conclusion of the 45-day remediation period, your site administrator will reevaluate your performance to determine if you have abided by the directives outlined above. [CUSD] is willing to assist you in overcoming these deficiencies. However, please be advised that [CUSD] insists that you correct these deficiencies and improve you conduct immediately.  Your failure to do so may result in your dismissal and/or other discipline in accordance with the provisions of the Education Code.

Plaintiff's Exhibit 6.[10]

Based on an incident involving Lincoln Elementary school during "the early 1990's," Garcia alleges that CUSD has a standard practice of covering up sexual and other misconduct by teachers.  See FAC at ¶ 40.  As a result of this standard practice, CUSD engaged in a deliberately indifferent investigation of Krista's complaints, which was designed and intended to cover up sexual and other misconduct by predatory teachers.  See id. at ¶¶ 41, 43.  "CUSD has a district

---

[10]The Notice of Unprofessional Conduct also stated that it would be placed in Burns's personnel file.

policy of indifference to and tolerance for sexual harassment by teachers to minor students." Id. at ¶ 44.

Garcia filed this lawsuit in the Fresno County Superior Court in November 2008. Defendants removed in December 2008.  In the FAC, Garcia alleges the following causes of action: (1) assault, (2) battery, (3) false imprisonment, (4) intentional infliction of emotional distress, (5) violations of California education code §§ 201(c), (f) and 212.5, (6) negligence *per se* through California Penal Code § 11166, (7) negligent supervision, (8) negligent training, (9) negligent hiring/retention, (10) violation 20 U.S.C. § 1681(a) ("Title IX"), and (11) violation of 42 U.S.C. § 1983 by Burns.

## I.      MOTION TO DISMISS

### Legal Framework

#### *Rule 8(a)*

Federal Rule of Civil Procedure 8(a) sets the pleading standard for claims for relief. "Under the liberal rules of pleading, a plaintiff need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Sagana v. Tenorio, 384 F.3d 731, 736 (9th Cir. 2004) (quoting Fed. R. Civ. P. 8(a)).  This rule does "not require a claimant to set out in detail the facts upon which he bases his claim."  Conley v. Gibson, 355 U.S. 41, 47 (1957).  The pleadings need only give the opposing party fair notice of a claim and the claim's basis.  Conley, 355 U.S. at 47; Sagana, 384 F.3d at 736; Fontana v. Haskin, 262 F.3d 871, 877 (9th Cir. 2001). 47).  The pleadings are also to "be construed as to do substantial justice," and "no technical forms of pleading . . . are required."  Fed. Rules Civ. Pro. 8(e)(1), 8(f); Sagana, 384 F.3d at 736; Fontana, 262 F.3d at 877.

#### *Rule 12(b)(6)*

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  Johnson v. Riverside

Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th

Cir. 2001).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are

taken as true and construed in the light most favorable to the non-moving party.  Marceau v.

Balckfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075,

1077 (9th Cir. 1999).  The Court must also assume that general allegations embrace the

necessary, specific facts to support the claim.  Smith v. Pacific Prop. and Dev. Corp., 358 F.3d

1097, 1106 (9th Cir. 2004); Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir.

1994).  But, the Court is not required "to accept as true allegations that are merely conclusory,

unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536

F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th

Cir. 2001).  Although they may provide the framework of a complaint, legal conclusions are not

accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere

conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see

also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).  Furthermore,

Courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the

defendants have violated . . . laws in ways that have not been alleged."  Associated General

Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526

(1983).  As the Supreme Court has recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Thus, to "avoid a Rule 12(b)(6)

dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face."  Iqbal, 129 S.Ct. at 1949; see Twombly, 550 U.S. at 570; see

also Weber v. Department of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court draw the

reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S.Ct. at

1949. As the Supreme Court has explained:

> The plausibility standard is not akin to a 'probability requirement,' but it asks more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'
> . . .
>
> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

Iqbal, 129 S.Ct. at 1949-50. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited to reviewing only the complaint, but may review materials which are properly submitted as part of the complaint and may take judicial notice of public records outside the pleadings. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986). Further, under the "incorporation by reference" doctrine, courts may review documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lapidus v. Hecht, 232 F.3d 679, 682 (9th Cir. 2000). The "incorporation by reference" doctrine also applies "to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." Knievel, 393 F.3d at 1076 (citing Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998)).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading

could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

### A.    SIXTH & TWELFTH CLAIMS
### (Violations of California Education Code §§ 201(c), 212.5 and Title IX)

*Defendant's Argument*

CUSD argues, *inter alia*, that it did not have actual knowledge of the November and March Incidents until after they occurred. After CUSD was informed of the incidents, it did not act with deliberate indifference. The complaint shows that CUSD took immediate action when it removed Garcia from Burns's class on April 1. An investigation into the March Incident was also immediately instituted. CUSD personnel repeatedly stressed the importance of conducting a proper investigation. The investigation produced inconsistent witness statements. After Garcia was removed, no further physical incidents occurred. Assuming that Burns's "leering" constitutes harassment, liability does not attach simply because harassment occurred. When it learned of the leering, CUSD removed Burns entirely from the classroom, placed him on administrative leave, and instituted a second investigation. As a result of the investigation, Burns received a formal Notice of Unprofessional Conduct. The FAC's allegations affirmatively show an absence of deliberate indifference.

*Plaintiff's Opposition*

Without citation to Title IX authority,[11] Garcia argues that she may prove that CUSD has a policy of deliberate indifference to sexual misconduct by adult male teachers towards minor students. This policy is manifested by other bad acts by CUSD, including CUSD's indifference to the three other instances – the Lincoln Elementary incident in "the early 1990's," the incident with student ABC, and the incident with student XYZ.

*Pertinent Allegation*

After incorporating numerous prior paragraphs by reference, the FAC in pertinent part

---

[11]Instead, Garcia cites only a First Circuit case that deals with *Monell* liability, *Foley v. City of Lowell*, 982 F.2d 10 (1st Cir. 1991). No other case is cited in the relevant section of her opposition. See Opposition at pp. 24-25.

alleges: ". . . *after* gaining actual notice of Burns's misconduct, school officials who had authority to institute corrective measures against Burns on behalf of CUSD, including . . . Jager [and] Bass . . . were deliberately indifferent to Burns's misconduct and failed to institute corrective measures against Burns thereby permitting Burns to continue to discriminate against and sexually harass [Garcia]."   FAC at ¶ 110 (emphasis in original).

### *Legal Standard – Title IX*[12]

Title IX  provides in part that: "No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . ." 20  U.S.C. § 1681(a).   Title IX encompasses sexual harassment of a student by a teacher and is enforceable through an implied private right of action for damages against a school district.   Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 75-76 (1992).  In a teacher-on-student Title IX sexual harassment case, the student must show that the harassing conduct was so severe or pervasive that the student was deprived of access to the education benefits or opportunities provided by the school.  See Jennings v. University of N.C., 482 F.3d 686, 699 (4th Cir. 2007); Stanley v. Trustees of the Cal. State Univ., 433 F.3d 1129, 1137 (9th Cir. 2006).  However, damages for a teacher's sexual harassment of a student may not be recovered "unless an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct." Gebser v. Lago Vista Independent School Dist.,  524 U.S. 274, 277 (1998); Bostic v. Smyrna School Dist., 418 F.3d 355, 360 (3rd Cir. 2005).  The Supreme Court "expressly declined to impose liability on 'principles of *respondeat superior* or constructive notice,' instead demanding actual notice to an official of the defendant." Oden v. Northern Marianas College, 440 F.3d 1085, 1089 (9th Cir. 2006) (citing Gebser, 524 U.S. at 285).

A school's response amounts to "deliberate indifference" when it is "clearly unreasonable in light of the known circumstances" such that the "official decision . . . [is] not to remedy the

---

[12]As per *Donovan v. Poway Unified Sch. Dist.*, 167 Cal.App.4th 567 (2008), and as acknowledged by both parties, the same standards that govern Garcia's Title IX claim also govern her California Education Code claims.

violation." Oden, 440 F.3d at 1089 (citing Gebser, 524 U.S. at 290). "Deliberate indifference" is a high standard and requires conduct that is beyond mere negligence. See Baynard v. Malone, 268 F.3d 228, 236 (4th Cir. 2001); Doe v. Dallas Indep. Sch. Dist., 220 F.3d 380, 383-84 (5th Cir. 2000); see also Oden, 440 F.3d at 1089 ("Nonetheless the record fails to demonstrate that the delay was more than negligent, lazy, or careless."); Williams v. Paint Valley Local Sch. Dist., 400 F.3d 360, 367 (6th Cir. 2005). Deliberate indifference is a fact sensitive inquiry. See Doe, 220 F.3d at 384; cf. Oden, 440 F.3d at 1089. "Deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 645 (1999); Stanley, 433 F.3d at 1137. Although courts have indicated that continuing to utilize the same response after it has been shown to be ineffective, or not responding at all, or utilizing a "minimalist response" may demonstrate "deliberate indifference," see Escue v. Northern Okla. College, 450 F.3d 1146, 1155-56 (10th Cir. 2006); Vance v. Spencer County Public School Dist., 231 F.3d 253, 261-62 (6th Cir. 2000), a school is not deliberately indifferent simply because the response did not remedy the harassment or because the school did not utilize a particular discipline.[13] See Escue, 450 F.3d at 1155; Williams, 400 F.3d at 367; Baynard, 268 F.3d at 236; Willis v. Brown Univ., 184 F.3d 20, 26 (1st Cir. 1999); cf. Oden, 440 F.3d at 1089.

### *Discussion*

As an initial matter, to the extent that Garcia is attempting to allege student-on-student harassment or retaliation, the allegations are again insufficient. There are no allegations that CUSD had actual notice of student harassment. See Davis, 526 U.S. at 650. Further, the allegation dealing with student harassment simply states, "students in the class taunted, harassed, and retaliated against [Garcia] based on Burns's allegations." FAC at ¶ 33. The allegation does not plausibly indicate "severe, pervasive, and objectively offensive" conduct. See Davis, 526 U.S. at 650. This conclusory legal allegation does not state a claim. See Iqbal, 129 S.Ct. 1949-50; Twombly, 550 U.S. at 555; Warren, 328 F.3d at 1139; Sprewell, 266 F.3d at 988. Since the

---

[13]The deliberate indifference standard enunciated by the Supreme Court is the same for student-on-student as well as teacher-on-student harassment cases. Williams, 400 F.3d at 367.

Court previously apprised Garcia of these same deficiencies, see Prior Order at p. 10, and since the deficiencies have not been corrected, the Court can only conclude that Garcia does not intend to allege or is unwilling or unable to properly plead a claim for student-on-student harassment. To the extent that Garcia is attempting to allege such a claim, dismissal without leave to amend is appropriate.

With respect to teacher-on-student harassment, the FAC indicates, and Garcia does not dispute, that the first time CUSD had actual notice of the November and March Incidents was when Garcia told CUSD personnel at the SARB meeting. Although Garcia continues to allege that she informed the eighth grade secretary about the November Incident on the day of the occurrence, there again is no allegation or indication that the secretary was an "official of [CUSD] who at a minimum has authority to institute corrective measures on the district's behalf. . . ." Gebser, 524 U.S. at 277; Bostic, 418 F.3d at 360. The Court made the same observation previously. See Prior Order at p. 9 n.5. As such, the FAC indicates that the earliest time that CUSD had actual knowledge of any harassing conduct by Burns was April 1, 2008.

Like its predecessor, the FAC does not show deliberate indifference by CUSD after April 1, 2008. In the Prior Order, this Court ruled:

> At the [SARB] meeting, Garcia requested to be removed from Burns's class and that request was granted. See Complaint at ¶¶ 20-22; cf. Peck v. W. Aurora Sch. Dist. 129, 2006 U.S. Dist. LEXIS 67145, *4-*9 (N.D. Ill. Aug. 30, 2006) (holding that several instances of conduct alleged in the complaint showed deliberate indifference by the school district including refusing to honor the student's request to be removed from the teacher's class without receiving a failing grade). This response would eliminate the regular and prolonged contact that Garcia would have with Burns in his math class. As such, in the spectrum of possible remedial conduct, it was not one that naturally would cause Garcia to undergo harassment by Burns or make her liable or vulnerable to it. See Davis, 526 U.S. at 645; Stanley, 433 F.3d at 1137.
>
> Garcia contends that Burns's harassing conduct continued after April 1 because Burns would "leer and stare" at her. However, that an initial response does not remedy or prevent harassment from occurring is not, in and of itself, sufficient grounds for liability. See Williams, 400 F.3d at 367; Baynard, 268 F.3d at 236; Willis, 184 F.3d at 26. Garcia's allegations show that after she complained to CUSD (albeit through her attorneys) about Burns's leering and staring, CUSD responded. After Garcia complained about this conduct, CUSD removed Burns from the classroom altogether. See Complaint at ¶¶ 27-28. The Complaint shows that CUSD did not fail to respond to Garcia's additional complaints. CUSD took further corrective action beyond its initial response of removing Garcia from Burns's classroom. In other words, once it received word that further harassing

conduct was occurring, CUSD tried a different course of corrective conduct.  Cf. Vance, 231 F.3d at 261-62 (holding that deliberate indifference may be shown by continuing to utilize the same failed responses to complaints of harassment). Removing Burns from any classroom duties is a form of punishment and it was done as result of Garcia's complaints.  See Complaint at ¶¶ 28-29.  It is not a response that naturally would cause Garcia to undergo harassment by Burns or make her liable or vulnerable to it.  See Davis, 526 U.S. at 645; Stanley, 433 F.3d at 1137.

Prior Order at pp. 9-10.  The allegations in the FAC do nothing to materially change this analysis. The FAC and the documents that the FAC "incorporates by reference" show that Jager was concerned about the March Incident and contacted other CUSD personnel on several occasions for advice on how to proceed.  See FAC at ¶¶ 25-29; Defendants' Exhibit A.  Further, the day after the May 15 letter from Garcia's counsel, CUSD placed Burns on administrative leave, informed him that an investigation would ensue, and directed him to stay off of CUSD property. See FAC at ¶32; Plaintiff's Exhibit 3.  The investigation concluded in September 2008[14] and resulted in a formal Notice of Unprofessional Conduct.  See Plaintiff's Exhibit 6.  In short, the allegations show that CUSD did not act with deliberate indifference once it had actual knowledge of Burns's conduct towards Garcia.  CUSD's actions did not cause Garcia to undergo harassment or make her liable or vulnerable to it.  See Davis, 526 U.S. at 645; Stanley, 433 F.3d at 1137.

Garcia's opposition does not directly address CUSD's argument that it was not deliberately indifferent towards her.  Rather, Garcia argues that CUSD had a policy of deliberate indifference.  Garcia cites no Title IX cases in her discussion of deliberate indifference, but her argument appears to be based on Murrell v. School Dist. No. 1, 186 F.3d 1238, 1251 n.7 (10th Cir. 1999), where the Tenth Circuit stated, "We agree with the School District that a failure to prevent sexual harassment by a student before it occurs does not violate Title IX . . . absent a showing of an institutional policy of indifference."  The Court is not convinced by Garcia's argument.

The relevant allegation under the FAC's Title IX section reads: ". . . after gaining actual notice of Burns's misconduct, school officials who had authority to institute corrective measures

---

[14]CUSD informed Garcia's mother and Burns that the investigation was not completed sooner because the complaint was made at the end of the school year and there was difficulty in tracking down witnesses.  See Plaintiff's Exhibits 4, 5; Defendants' Exhibit B.  Garcia does not challenge this assertion.

1  against Burns on behalf of CUSD, . . . were deliberately indifferent to Burns's misconduct . . . ."

2  FAC at ¶ 110 (emphasis in original).  Thus, for purposes of the twelfth cause of action, the

3  FAC's basis for deliberate indifference is CUSD's response *after* it learned of Burns's conduct.

4  The twelfth cause of action is not based on an institutional policy of deliberate indifference.  As

5  discussed above, the FAC affirmatively shows that CUSD was not deliberately indifferent after it

6  learned of Burns's conduct.

7       Since Garcia is arguing a Title IX theory of recovery that is not present in the FAC, the

8  question becomes whether the Court should grant her leave to amend this cause of action.  The

9  Court does not believe that amendment is appropriate.  As the Court did in the Prior Order, it will

10 again assume without deciding that the Ninth Circuit would adopt the "failure to prevent" cause

11 of action in *Murrell*'s footnote.[15]  Under such an assumption, the Court does not believe that

12 allowing amendment is appropriate because the three instances upon which Garcia relies to show

13 a policy of deliberate indifference are not persuasive.

14      With respect to the incident at Lincoln Elementary, Garcia admits that this incident

15 occurred in the early 1990's, was at a different school, and involved a different teacher and

16 administrator.  See FAC at ¶ 40.  An incident that occurred at an entirely different school

17 between 15 and 20 years prior is hardly indicative of a custom or policy, especially given

18 CUSD's response to Garcia's complaints.  Cf. Iqbal, 129 S.Ct. at 1249-50; cf. also Fogel v.

19 Collins, 531 F.3d 824, 834 (9th Cir. 2008) (holding that a "policy" for *Monell* liability is "a

20 deliberate choice to follow a course of action . . . made from among various alternatives by the

21 official or officials responsible for establishing final policy with respect to the subject matter in

22 question."); Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1995) (holding that a "custom" for

23 *Monell* liability is a widespread and longstanding practice that "constitutes the standard operating

24 procedure of the local government entity" and that a custom may not be predicated on isolated or

25 sporadic incidents; it must be founded upon practices of sufficient duration, frequency and

26

27      [15]The *Murrell* footnote indicates a cause of action would exist, but does so without any material discussion
   or citation to authority.  Further, this Court is not aware of another Circuit that has adopted *Murrell*'s footnoted cause

28 of action.  This is in part why the Court in the Prior Order only assumed without deciding that the Ninth Circuit
   would adopt the cause of action.  However, the parties have not addressed this particular issue.

1  consistency); Meehan v. Los Angeles County, 856 F.2d 102, 107 (9th Cir. 1988) (holding that

2  two incidents were not sufficient to establish a "custom" for Monell liability).

3      With respect to student ABC, although the allegations against ABC were not mentioned

4  in the May 16, 2008, administrative leave letter, they were part of the May 15, 2008, letter from

5  Garcia's counsel.[16] Further, the incident with ABC was mentioned in the September 5, 2008,

6  letter of findings that CUSD sent to Burns. See Plaintiff's Exhibit 5. In the September 5, 2008,

7  letter, CUSD found that there was insufficient evidence that Burns touched ABC on her bare

8  skin, but there was conflicting evidence of whether Burns touched ABC on her shirt above her

9  breast. See id. Importantly, the incident with ABC was also one of the bases for the September

10  12, 2008, Notice of Unprofessional Conduct. See Plaintiff's Exhibit 6. In fact, the Notice of

11  Unprofessional Conduct informed Burns that it was inappropriate to touch students and stated

12  that ABC and another witness confirmed that Burns touched ABC on her shirt. See id.

13  Therefore, contrary to Garcia's argument, CUSD investigated the incident with ABC, concluded

14  that Burns touched ABC (on her shirt), and the incident was part of the Notice of Unprofessional

15  Conduct. That the Notice of Unprofessional Conduct was utilized instead of another form of

16  punishment does not show a policy of deliberate indifference. See Escue, 450 F.3d at 1155.

17      With respect to student XYZ, that incident allegedly occurred on September 4, 2008, and

18  involved an oral statement made by Burns to XYZ. See FAC at ¶ 35. The FAC alleges that

19  CUSD failed to mention the incident with XYZ in its September 5, 2008, letter to Burns and in

20  the September 12, 2008, Notice of Unprofessional Conduct. See id. at ¶¶ 36-37. However, the

21  September 5, 2008, letter to Burns was one that informed him of the result of CUSD's completed

22  investigation. Since Garcia's mother received an almost identical letter as Burns, but on

23  September 3, 2008, see Defendants's Exhibit B, CUSD's investigation clearly had ended by the

24  time the incident with XYZ occurred/was reported. Further, the September 12, 2008, Notice of

25  Unprofessional Conduct (as well as the September 5 letter) dealt with the complaints made by

26  Garcia (including the allegation her attorney made regarding student ABC). There is no

27

28

[16]Garcia does not challenge CUSD's assertion that the ABC incident was reported by Garcia and not ABC.

indication that Garcia had anything to do with or had in any way informed CUSD about XYZ. The incident with XYZ is simply an unrelated incident that occurred after CUSD's investigation had completed.  Given the clear purpose of the September 5, 2008, letter and the September 12, 2008, Notice of Unprofessional Conduct, it is hardly remarkable that the separate, independent incident with XYZ was not mentioned.  Cf. Iqbal, 129 S.Ct. at 1249-50.  Additionally, there is no allegation in the FAC that CUSD did not investigate XYZ's claim.  Reliance on Burns's answer to Paragraph 35 is not persuasive as most of the factual allegations relate to what student XYZ said to CUSD and what XYZ's mother believed; the allegations do not relate to what Burns was told or shown or knew.[17]  Cf. Iqbal, 129 S.Ct. at 1249-50; cf. also Fogel, 531 F.3d at 834; Murrell, 186 F.3d at 1251 n.7; Trevino, 99 F.3d at 918; Meehan, 856 F.2d at 107.

This is the second time the Court has found that Garcia has failed to adequately allege deliberate indifference, and the FAC's additional allegations further indicate that CUSD was not deliberately indifferent.  A school is not liable under Title IX if its actions were not deliberately indifferent.  See Gebser, 524 U.S. at 277; Oden, 440 F.3d at 1089 ; Williams, 400 F.3d at 367. Further, the FAC again does not show that CUSD had a policy of deliberate indifference.[18]  See Fogel, 531 F.3d at 834; Trevino, 99 F.3d at 918; Meehan, 856 F.2d at 107.   Garcia does not explain how, or indicate that she can, correct this deficiency.  Since the Court previously dismissed Garcia's Title IX claims for the same reasons, it appears that allowing further amendment would be futile.  Accordingly, the Court will dismiss the Title IX claim (and the corresponding state law claim, the sixth cause of action) without leave to amend.

---

[17]Paragraph 35 of the FAC reads:
On or about September 4, 2008, [XYZ] and her mother made a complaint about Burns. [XYZ] explained that while she was in Burns's class the main office called and instructed her to go to the main office. [XYZ] wrote, "As I was getting ready to leave Mr. Burns asked if I got in trouble by the cops last night for going to City Lights.  He then asked why I didn't take him."  When [XYZ] reported this conversation to her mother, her mother realized that City Lights is an adult entertainment venue and that Burns was asking her daughter if her daughter was a "strip teaser" at the venue and also asking her daughter why she wasn't more friendly to him."

[18]The Court addressed this *Murrell* issue in the Prior Order, although in connection with a California Education Code claim, and reached the same conclusion.  See Prior Order at 11-12; see also Discussion *infra*.

## B.   SEVENTH CAUSE OF ACTION
(Violation of California Education Code §§ 201(f), 212.5 – "Failure to Prevent")

*Defendant's Argument*

CUSD argues that a claim of failure to prevent is a legal conundrum since a school district is liable only if it has actual knowledge of discrimination that has occurred and responds in a deliberately indifferent manner.  However, the Tenth Circuit has noted that there can be no liability for failure to prevent harassment unless there is a school policy of indifference.  Garcia fails to allege any facts that demonstrate the existence of an institutional policy of indifference. Garcia's allegations regarding Lincoln Elementary are unpersuasive as they involve an incident that happened approximately 20 years ago, at a different school, and with different personnel.

*Plaintiff's Argument*

Garcia's opposition is the same argument that she made regarding her Title IX claim.[19] Garcia argues that CUSD has a policy of deliberate indifference to sexual misconduct by adult male teachers towards minor students.  This policy is manifested by other bad acts by CUSD, including CUSD's indifference to the three other instances – the Lincoln Elementary incident in "the early 1990's," the incident with student ABC, and the incident with student XYZ.

*Resolution*

In a footnote, the Tenth Circuit has stated:

> Throughout its briefs, the School District repeatedly attempts to characterize the conduct by school officials of which Ms. Murrell complains as a failure to prevent one student from harassing another. . . . We agree with the School District that a failure to prevent sexual harassment by a student before it occurs does not violate Title IX or the Fourteenth Amendment absent a showing of an institutional policy of indifference.  However, a refusal to remedy known sexual harassment is actionable.

Murrell v. School Dist. No. 1, 186 F.3d 1238, 1251 n.7 (10th Cir. 1999); see also Doe v. Ohio State Univ. Bd. of Regents, 2006 U.S. Dist. LEXIS 70444, *34 (S.D. Ohio Sept. 28, 2006). Again, assuming without deciding that California courts would adopt this cause of action, the FAC does not show a plausible claim for "failure to prevent."  As discussed in the previous section, the three incidents identified by Garcia do not plausibly indicate a policy of deliberate

[19]The Sixth, Seventh, and Twelfth causes of action are grouped into one section of the opposition.

1    indifference – the Lincoln Elementary incident is "stale" at 15 to 20 years old and involved

2    different personnel at a different school, CUSD investigated the incident with ABC (which was

3    reported by Garcia's counsel to CUSD) and that incident was one of the bases for the Notice of

4    Unprofessional Conduct, and the failure to mention the incident with XYZ in the September

5    2008 correspondences/notices is not surprising since that incident was independent of Garcia's

6    claims and occurred after the investigation of Garcia's claims had been completed.  Further, as

7    discussed above, CUSD's conduct regarding Garcia's claims does not plausibly indicate a policy

8    of deliberate indifference.  At best, Garcia has described sporadic conduct.  As this is the second

9    time that the Court has found the allegations of this claim to be wanting, the Court does not see

10   how the deficiency can be corrected.  Dismissal without leave to amend is appropriate.

11          **C.     FIRST, SECOND, THIRD, & FOURTH CLAIMS**
            **(CUSD's Ratification of Assault, Battery, False Imprisonment, Intentional Infliction**
12           **of Emotional Distress by Burns)**

13          *Defendant's Argument*

14          The FAC contains inadequate allegations of ratification.  Ratification is a voluntary

15   election of an employer to treat an employee's conduct as its own.  Ratification occurs when an

16   employer takes no action against an employee or rewards the employee.  Here, the FAC does not

17   show ratification because CUSD removed Burns from the classroom, instituted two

18   investigations of Burns's conduct, and issued a Notice of Unprofessional Conduct.  This does not

19   show ratification.  Further, the allegations of ratification in the FAC are largely conclusory and

20   contain no supportive factual allegations.  Finally, reliance on the incidents with students ABC

21   and XYZ are unavailing as CUSD investigated the incident with ABC and the incident with XYZ

22   occurred after Garcia ceased attending the School.

23          *Plaintiff's Opposition*

24          Garcia argues that notice pleading is all that is required and that her allegations are

25   sufficient.  Garcia argues that the FAC alleges ratification because: (1) CUSD retained Burns in

26   its employment; (2) CUSD accepted Burns's exculpatory explanation despite facts showing that

27   the exculpatory explanation was untrue and its awareness that Burns was lying as to other

28   allegations; (3) CUSD did not honestly and fairly investigate Garcia's charges; (4) CUSD lied to

Garcia's mother and falsely represented to her the outcome of its investigation; (5) CUSD returned Burns to the classroom; and (6) CUSD refused to investigate student XYZ's allegations (as evidenced by Burns's answer with respect to Paragraph 35 of the FAC). Ratification is a question of fact and these allegations are sufficient for the question to be resolved by a jury. However, to the extent that more might be needed, Burns has claimed the privilege against self-incrimination with respect to discipline he received in 2003, specifically an administrative leave notice date January 7, 2003, and a letter of reprimand dated January 10, 2003. This could be relevant to ratification.

### *Legal Standard*

"As an alternate theory to *respondeat superior*, an employer may be liable for an employee's act where the employer either authorized the tortious act or subsequently ratified an originally unauthorized tort." C.R. v. Tenet Healthcare Corp., 169 Cal.App.4th 1094, 1110 (2009); Baptist v. Robinson, 143 Cal.App.4th 151, 169-70 (2006). "An employee's actions may be ratified after the fact by the employer's voluntary election to adopt the employee's conduct by, in essence, treating the conduct as its own." Delfino v. Agilent Technologies, Inc., 145 Cal.App.4th 790, 810 (2006). The California Supreme Court has explained:

> Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him. A purported agent's act may be adopted expressly or it may be adopted by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred, including conduct which is inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it.

Rakestraw v. Rodrigues, 8 Cal. 3d 67, 73 (1972); Fretland v. County of Humboldt, 69 Cal.App.4th 1478, 1491 (1999). "The theory of ratification is generally applied where an employer fails to investigate or respond to charges that an employee committed an intentional tort, such as assault or battery." C.R., 169 Cal.App.4th at 1110; Baptist, 143 Cal.App.4th at 169-70. Retention of an employee after knowledge of the employee's conduct or an adequate opportunity to learn of the conduct may support an inference of ratification. See Delfino, 145 Cal.App.4th at 810; Baptist, 143 Cal.App.4th at 169; Murillo v. Rite Stuff Foods, Inc., 65 Cal.App.4th 833, 852 (1998). In a case regarding the appropriateness of punitive damages, the

California Supreme Court has stated:

> While it is undoubtedly true that a principal may ratify and approve the oppressive acts of an agent and that failure to discharge such agent may be evidence tending to show ratification, but the omission to dispense with the services of the offender, standing by itself and unsupported by any other circumstances indicating the employer's approval of his course, is never sufficient to establish ratification. By continuing the wrongdoer in his service after knowledge or opportunity to learn of the misconduct and by other acts, the principal may become an abettor of the oppression and may make himself liable in punitive damages.

Edmunds v. Atchison, T. & S. F. R. Co., 174 Cal. 246, 249 (1917). Accordingly, "ratification may be inferred from the fact that the employer, after being informed of the employee's actions, does not fully investigate and fails to repudiate the employee's conduct by redressing the harm done and punishing or discharging the employee." Roberts v. Ford Aero. & Communications Corp., 224 Cal.App.3d 793, 801 (1990); Fisher v. San Pedro Peninsula Hospital, 214 Cal.App.3d 590, 621 (1989); see also Iverson v. Atlas Pacific Engineering, 143 Cal.App.3d 219, 228 (1989) (holding that ratification had been alleged where the employer failed to "criticize, censure, terminate, suspend or otherwise sanction or take any action against [the employee]").

### *Discussion*

In the Prior Order on the issue of ratification by CUSD, the Court explained:

> First, ratification is a voluntary election to adopt another's conduct as one's own. See Rakestraw, 8 Cal.3d at 73. As discussed above, however, the Complaint's allegations affirmatively show that CUSD was not deliberately indifferent to Garcia's complaints. CUSD granted Garcia's request to be removed from Burns's classroom and CUSD later removed Burns from the classroom altogether after Garcia complained about the staring and leering. In other words, CUSD changed the status quo. See Roberts, 224 Cal.App.3d at 801; Fisher, 214 Cal.App.3d at 621; Iverson, 143 Cal.App.3d at 228. It is true that the Complaint indicates that CUSD did not terminate Burns. However, an employer need not always terminate an employee in order to avoid ratification. See, e.g., Fretland, 69 Cal.App.4th at 1491 (finding no ratification where employer issued a "letter of warning" to the employee); Sullivan v. Matt, 130 Cal.App.2d 134, 144 (1955) (finding no ratification where employer did not discharge an employee who had unique and necessary skills). By acting to change the circumstances facing Garcia (a form of redress) and by punishing Burns by removing him from his classroom duties, CUSD's alleged conduct is contrary to a voluntary adoption of Burns's conduct as its own. If CUSD had ratified Burns's conduct, it would not have taken steps to effectuate change or to punish Burns. The same actions by CUSD that show a lack of deliberate indifference also show a lack of ratification.

Prior Order at p. 17. The FAC does not materially change this analysis. After Garcia was removed from Burns's class on April 1, 2008, Jager began an investigation and indicated in e-mails that he wanted to be sure to "follow through," did not want "to overlook" the issue, and did

not want the issue "to fall through the cracks." FAC at ¶¶ 26-29; Defendants' Exhibit A.  When

Garcia's counsel informed CUSD about Burns staring and leering at Garcia and about student

ABC, CUSD immediately placed Burns on administrative leave.  See Plaintiff's Exhibit 3.  The

administrative leave notice does say that it is not intended as a punishment,[20] but it also tells

Burns to stay off of CUSD property.  See id.  This is a change of the status quo and a form of

redress in that it would ensure that Burns would not be in contact with Garcia while she was at

the School.  Further, CUSD investigated all of the incidents identified in the May 15 letter from

Garcia's counsel.[21]  CUSD sent a report of the findings to Garcia's mother,[22] sent a copy of the

findings to Burns, and then issued a formal Notice of Unprofessional Conduct.  See Plaintiff's

Exhibits 4, 5, 6; Defendant's Exhibits B, F.

Particularly illuminating and probative is the Notice of Unprofessional Conduct.  The

Notice stated that it: (1) constituted a statutorily mandated 45-day notice period that was required

before initiating dismissal and/or suspension proceedings; (2) constituted a directive to correct

unprofessional conduct; (3) was to provide Burns an opportunity to correct his faults; (4)

identified the unprofessional conduct as (a) picking up a female student upside down, facing

away from him, and shaking her up and down (essentially the November Incident), (b) touching a

female student on the shirt above her breast area (the incident with student ABC), and (c) using a

stop sign to tap a student on either the back or buttocks as she crossed the street (essentially the

March Incident); (4) stated that the three incidents constituted unprofessional conduct; (5)

directed Burns to eliminate the identified unprofessional conduct within 45-days; (6) told Burns

---

[20]This aspect of the administrative leave notice is contrary to the Prior Order's conclusion that removal from class was a punishment.

[21]Garcia argues that CUSD did not honestly and fairly investigate Garcia's claims.  However, Garcia's opposition and the FAC, state without elaboration that the investigation was improper, and there are no facts alleged in the FAC that plausibly indicate a dishonest or "unfair" investigation.

[22]Garcia argues that CUSD lied to her mother and falsely represented the outcome of the investigation.  However, CUSD's letter to Garcia's mother is very similar to the September 5, 2008, letter that CUSD sent to Burns.  Both letters concluded that there was insufficient evidence of sexual harassment.  See Plaintiff's Exhibits 4 and 5.  The letter to Garcia's mother also stated that Burns was placed on administrative leave.  See Plaintiff's Exhibit 4.  Although the letter to Garcia's mother stated that CUSD considered the matter closed, see id., nine days later CUSD issued the Notice of Unprofessional Conduct to Burns.  See Plaintiff's Exhibit 6.  However, by September 2008, Garcia was at a new school and the additional administrative action against Burns would not have affected Garcia.

to comply with four directives, i.e. (a) cease picking up students, (b) do not hit, tap, or touch students with any object, (c) review regulation 2111 concerning sexual harassment, and (d) conduct himself in a professional manner; (7) stated that Burns would be reevaluated at the end of 45-days to ensure that Burns had "overcome these deficiencies"; (8) stated that CUSD insisted that the deficiencies be corrected and that Burns's conduct was to improve immediately; (9) stated that failure to correct his behavior may result in dismissal or other punishment in accordance with the California Education Code; and (10) told Burns that the notice would be placed in his personnel file.  See Plaintiff's Exhibit 6.  In essence, CUSD's Notice of Unprofessional Conduct informed Burns that his conduct was unprofessional and unacceptable and that he must improve/change his conduct or face further discipline, including possible termination.[23]  The Notice of Unprofessional Conduct shows that CUSD did not approve of Burns's conduct and did not adopt that conduct as its own.  See Fretland, 69 Cal.App.4th at 1491 (finding no ratification where employer issued a "letter of warning" to the employee).

Garcia relies heavily on cases that hold a failure to discharge an employee after learning of wrong doing may be evidence of ratification.  However, in each of these cases, the employer had knowledge of its employee's conduct and there was no indication that the employer took any kind of corrective or disciplinary action.  See Murillo, 65 Cal.App.4th at 839, 852 (plaintiff complained about sexually harassing conduct, no redress or investigation occurred, the harassing employee apparently was not fired, and plaintiff herself was disciplined and terminated); Coats v. Construction & Gen. Laborers Local No. 185, 15 Cal.App.3d 908, 911-14 (1971) (labor union investigated the physical assault of plaintiff by union managers, did not redress plaintiff's claim or discipline the managers, the managers remained in their positions, the union was aware of the managers' violent propensities, and the union detrimentally changed its dealings with plaintiff

---

[23]Garcia states that CUSD accepted Burns's explanations despite contrary facts and knowledge that Burns was lying about another incident, presumably student ABC.  However, the Notice of Unprofessional Conduct found that Burns had picked up Garcia and shook her (although the investigation suggested that both were laughing), and found that to be unprofessional and unacceptable.  The Notice of Unprofessional Conduct also found that Burns touched Garcia with a stop sign and that this was unprofessional and unacceptable.  The Notice of Unprofessional Conduct found that Burns touched student ABC on her shirt (but not on her bare skin) and that this was unprofessional and unacceptable.  CUSD required that Burns correct his behavior or face suspension or dismissal.  In other words, although CUSD's investigation was unable to corroborate every aspect of Garcia's claims, it found Burns's conduct to be unacceptable, required him to change his behavior, and did not adopt the conduct as its own.

and plaintiff's witnesses); <u>Shoopman v. Pacific Greyhound Lines</u>, 169 Cal.App.2d 848, 856 (1959) (principal was aware of agent's conduct toward plaintiff and agent was apparently retained without any indication of discipline or redress of plaintiff's claim); <u>Caldwell v. Farley</u>, 134 Cal.App.2d 84, 86, 90 (1955) (union secretary ratified the assault of a union steward against a union member by stating in part that other union members would get there heads "busted in" and retaining the union steward without any indication of redressing plaintiff's claim or disciplining the steward); <u>McChristian v. Popkin</u>, 75 Cal.App.2d 249, 257 (1946) (employer knew of altercation with employee and plaintiff but retained the employee without an indication of redressing plaintiff's claims or disciplining the employee); <u>Jameson v. Gavett</u>, 22 Cal.App.2d 646, 650, 652 (1937) (employer knew of the assault by employee against the plaintiff but retained employee and did not discipline employee or redress the plaintiff's claim ).[24]  As discussed above, CUSD removed Garcia from Burns's class, placed Burns on administrative leave and kept him off campus, conducted two investigations, informed Garcia's mother that Burns was placed on administrative leave, sent a Notice of Unprofessional Conduct that made clear that Burns's conduct (i.e. the November, March, and ABC incidents) was unacceptable, and informed Burns that if his behavior was not corrected then he would face further discipline including possible termination.  In other words, CUSD instituted corrective and disciplinary measures and did not accept Burns's conduct as its own.  The cases cited by Garcia are inapposite.

Garcia's opposition (but not the FAC) also states that CUSD failed to investigate the incident with student XYZ.  However, the incident with XYZ was reported and occurred after Garcia was no longer attending the School.  As discussed above, the incident with XYZ is a separate, independent incident.  Since it has nothing to do with Garcia's claims and indeed occurred later in time, the incident with student XYZ does not (nor does the Court see how it could) form a basis for CUSD <u>ratifying</u> Burns's conduct towards Garcia.

In sum, the FAC's allegations, as well as the documents that are incorporated by reference in the FAC, show that CUSD partially redressed Garcia's claims by removing her from Burns's class and by removing Burns from the classroom and CUSD property.  The allegations

---

[24]Garcia also cites *Delphino*, but in that case no ratification was found.  <u>Delphino</u>, 145 Cal.App.4th at 811.

and documents also show that CUSD investigated Garcia's claims (including her counsel's report about student ABC), found conflicting evidence, found that Burns's conduct was unprofessional and unacceptable, and told Burns that his conduct must change or that he would face further discipline including possible termination.  The FAC and its incorporated documents show that CUSD did not adopt Burns's conduct as its own.  The contrary allegations in the FAC are improperly conclusory and unsupported by the incorporated documents.  The FAC does not plausibly allege ratification.  See Iqbal, 129 S.Ct. 1949-50; Twombly, 550 U.S. at 555.

This is the second time that the Court has dismissed Garcia's ratification theory.  Garcia argues that if her allegations are again lacking, then leave to amend should be granted based on Burns's claim of privilege regarding discipline against him that took place in January 2003.[25]  In reply, CUSD has submitted the declaration of Burns's counsel.  The declaration states in pertinent part that the privilege log relates to two documents.  See Court's Docket Doc. No. 44. Counsel declares that neither document relates to any complaint or allegation of: (1) sexual harassment, (2) conduct or misconduct involving any student or relatives of students; (3) conduct or misconduct involving Burns's teaching or employment duties; (4) conduct or misconduct involving any harassment, discrimination, or retaliation; (5) conduct or misconduct involving Burns's teaching or employment duties; (6) conduct or misconduct involving physical contact of any kind to any person; (7) conduct or misconduct involving any claims of assault, battery, or false imprisonment; and (8) conduct or misconduct within the course and scope of Burns's employment with CUSD.  See id.  Counsel declares that the privilege log refers to conduct that occurred in 2002 during a weekend when school was in winter break.  See id.  "The incident that the documents identified in the privilege log refer to did not involve any students, faculty, or other [CUSD] employees whatsoever."  Id.  Garcia has not responded to this declaration.

In light of the declaration, the Court fails to see how these documents could possibly show that CUSD ratified Burns's conduct towards Garcia –  there is more than a four-year gap between the January 2003 discipline and Garcia's claims and the discipline does not involve

---

[25]"Facts raised for the first time in . . . opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice."  Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

conduct by Burns towards students or CUSD personnel.  Since the privileged documents cannot show ratification, and since the Court has already dismissed this claim once before, it is unclear how amendment would cure the defects.  The Court will dismiss the first, second, third, and fourth causes of action against CUSD without leave to amend.

### D.     NINTH & ELEVENTH CAUSES OF ACTION
**(Negligent Supervision and Negligent Hiring/Retention)**

_Defendant's Argument_

CUSD argues that the Court dismissed this cause of action as to CUSD's supervision of Bass, Cervantes, Jager, and Moua because the complaint did not plausibly show that CUSD had knowledge that these defendants could not be trusted without supervision.  Although this claim is in the FAC, the same deficiency remains.  Further, the new allegations in the complaint show that CUSD had no such knowledge because administrators investigated claims starting on April 1, the administrators repeatedly discussed the incident and how to proceed amongst themselves, Burns was immediately placed on administrative leave when CUSD received the May 15 letter, Garcia's mother was informed of the results of the investigation in a letter, and Burns was given a formal notice of unprofessional conduct.

With respect to the supervision of Burns, the Court did not dismiss this claim in the Prior Order.  However, the FAC and the documents attached in the motion to dismiss indicate that Dr. Bass was not present at the SARB meeting, Garcia only reported the March Incident at the SARB meeting, inconsistent information was received regarding the March Incident, Jager believed that Garcia's mother was satisfied, and as soon as it received the May 15 letter, CUSD placed Burns on administrative leave and opened a second investigation.  Because Garcia only reported the March Incident at the SARB meeting and because conflicting evidence about the incident was obtained, the FAC does not show that further supervision was necessary beyond the step of removing Garcia from Burns's class.

Finally, with respect to negligent hiring/retention, the Prior Order dismissed this cause of action because there were no allegations that CUSD failed to use reasonable care to determine whether Bass, Cervantes, Jager, Moua, and Burns were unfit.  Despite the dismissal, there are no

new facts that indicate that CUSD was negligent in its hiring/retention of these defendants.  In fact, the new allegations indicate that immediate investigations were instituted once Burns's conduct was reported, Garcia's mother received a three page letter that outlined the results of the second investigation, and Burns was formally disciplined.

### Plaintiff's Opposition

Garcia states that the FAC does not allege that CUSD had knowledge that the defendant employees could not be trusted without supervision.  However, Garcia seeks leave to amend her complaint regarding the hiring/retention of Burns.  The basis for the requested amendment is: (1) recent discovery indicates that Burns was placed on administrative leave and reprimanded in January 2003 due to misconduct of an unknown nature, and (2) on April 15, 2008, Burns received a subpar evaluation, which Garcia believes would have been the result of months of reviews and assessments of Burns's conduct.  With respect to the January 2003 incident, Burns has asserted the privilege of self-incrimination in resisting discovery.  This suggests that Burns committed a criminal act.  The January 2003 discipline and the April 2008 review will likely show Burns's unfitness and that CUSD was negligent to retain him.  Similarly, the January 2003 discipline and the April 2008 review provided information such that CUSD knew or should have known that Burns posed a particular risk and that risk materialized.  Accordingly, Garcia seeks leave to amend her complaint, but only in reference to Burns and not Bass, Cervantes, Jager, and Moua.  See Opposition at 27 ("Krista requests leave to amend her Ninth Claim for Relief against Burns, only, and not against the other individual defendants. . . . Therefore, Krista asks leave to amend her FAC to so allege as to Burns, only, and withdraw the allegations against the other individual defendants.").

### Relevant Allegations

After incorporating certain prior allegations, the FAC in relevant part alleges:

CUSD had and has a duty of care to properly supervise its employees, including Burns, Jager, Bass, Cervantes, Moua, and Does 1 through 20.

CUSD negligently supervised Burns, Jager, Bass, Cervantes, Moua . . . after April 1, 2008, when the allegations of Burns' conduct were made known to Defendants by Plaintiff.  Said negligence included attempting to stop and prevent [Garcia] from further reporting incidents of unlawful conduct by Burns, and failing to

ensure that Defendants properly performed their duties required by Penal Code § 11166 [and] Education Code § 200 et seq., regarding sexual harassment and CUSD Board Policies regarding prevention of sexual harassment."
. . . . . .

CUSD had and has a duty of care to properly hire and retain its employees, including Burns.

[Garcia] is informed and believes and thereon alleges that [CUSD] negligently hired and retained Burns and Does 1 through 20 by, in addition to the acts incorporated herein, failing to ascertain when they were hired whether they could properly perform their duties required by Penal Code § 11166, Education § 200, et seq., regarding prevention of sexual harassment, and CUSD Board Policies regarding prevention of sexual harassment and by failing to use reasonable care to ascertain during the course of their employment that they were capable of and willing to perform said duties.

More particularly, CUSD retained Burns as set forth herein, even after CUSD had information and knowledge of his unlawful conduct as described herein.

FAC at ¶¶ 93-94, 101-103.  The FAC also alleges that the negligent hiring/retaining and the failure to supervise were substantial factors in causing Garcia's harm.  See id. at ¶¶ 95, 104.

*Legal Standards*

"[T]here can be no liability for negligent supervision in the absence of knowledge by the principal that the agent or servant was a person who could not be trusted to act properly without being supervised."  Juarez v. Boy Scouts of Am., 81 Cal.App.4th 377, 395 (2000) (quoting Noble v. Sears, Roebuck & Co., 33 Cal.App.3d 654, 664 (1973)).

"In California, an employer can be held liable for negligent hiring if he knows the employee is unfit, or has reason to believe the employee is unfit, or fails to use reasonable care to discover the employee's unfitness before hiring him."  Juarez, 81 Cal.App.4th at 395; Evan F. v. Hughson United Methodist Church, 8 Cal.App.4th 828, 843 (1992); see also Virgina G. v. ABC Unified Sch. Dist., 15 Cal.App.4th 1848, 1855 (1993).  Liability for negligent hiring/retention occurs when the employer knew or should have known that hiring or retaining the employee created a particular risk or hazard and that particular harm materializes.  See Doe v. Capital Records, 50 Cal.App.4th 1038, 1054 (1996).

*Discussion*

As an initial matter, Garcia's opposition concedes deficiencies in her complaint regarding

1  negligent hiring/retention and negligent supervision.  As such, Garcia seeks to withdraw the

2  Ninth and Eleventh causes of action based on conduct by Bass, Cervantes, Jager, and Moua.

3  Garcia seeks to amend the FAC only as it relates to CUSD hiring/retaining and supervising

4  Burns.  See Opposition at p. 27.  In light of Garcia's request to withdraw her claims, the Ninth

5  and Eleventh causes of action for negligently supervising and hiring/retaining Bass, Cervantes,

6  Jager and Moua will be dismissed.  See id.

7       With respect to the Ninth cause of action for negligent supervision, in the Prior Order, the

8  Court found that a claim against CUSD had been sufficiently alleged.  The Prior Order explained

9  that CUSD had been informed of the November and March Incidents by Garcia at the SARB

10  meeting and, although Garcia was removed from Burns's class on April 1, 2008, no additional

11  supervision of Burns took place and Burns thereafter stared and leered at Garcia from head to

12  toe, which allegedly caused her severe emotional distress.  The same analysis holds true with

13  respect to the FAC – CUSD was aware of two incidents of inappropriate conduct by Burns

14  towards a student but no additional supervision occurred from April 1 to May 15, 2008.

15       CUSD argues that, from the minutes of the SARB meeting, there is an indication that

16  Bass was not present at the SARB meeting and that Garcia did not mention the November

17  Incident.  CUSD has included the minutes with its motion.  See Defendant's Exhibit H.

18  However, the Court does not believe that the SARB meeting minutes have been incorporated by

19  reference into the FAC.  The FAC does not reference the minutes nor do any claims depend upon

20  the content of the minutes (which may or may not accurately reflect what happened at the SARB

21  meeting).  Although the minutes may be relevant to determining the ultimate merit of Garcia's

22  claims, the minutes are not essential.  Accordingly, the Court will not consider the minutes of the

23  SARB meeting in resolving the motion to dismiss.  See Knievel, 393 F.3d at 1076.

24       Additionally, CUSD argues that the formal complaint that Garcia filed on April 1, 2008,

25  only referenced the March Incident and thus, CUSD did not have notice of the November

26  Incident until it received the May 15, 2008, letter from Garcia's counsel.  It is true that Garcia's

27  April 1 written complaint only refers to the March Incident.  See Defendant's Exhibit C.

28  However, the FAC expressly states that Garcia discussed both the November and March

31

Incidents at the SARB meeting.  See FAC at ¶¶ 18-19.  That Garcia's formal written complaint to CUSD only described the March Incident is not necessarily inconsistent with the allegation that Garcia verbally described both the November and March Incidents to those present at the SARB meeting.  Viewing the FAC and the documents incorporated by reference in the light most favorable to Garcia, there is still an indication that CUSD was informed of the November Incident, at least verbally, on April 1, 2008.  Thus, like the original complaint, the FAC states a claim for negligent supervision of Burns after April 1, 2008.  The Court will not dismiss the Ninth cause of action as it relates to CUSD's supervision of Burns.

With respect to the Eleventh cause of action for negligent hiring/retention, in the Prior Order, the Court read the claim as attempting to allege only the failure to use reasonable care to ascertain fitness.  The Court dismissed the claim because the complaint only alleged a failure to ascertain fitness, it did not allege a failure to use reasonable efforts to ascertain.[26]  The FAC now alleges that CUSD failed to use reasonable care in determining whether Burns could follow his obligations under the California Penal and Education Codes and also alleges that CUSD retained Burns after it learned of his conduct towards Garcia.  The FAC thus alleges that CUSD was negligent in its retention of Burns after April 1, 2008, the date that it learned of the November and March Incidents.  As alleged, the November and March Incidents indicate unfitness.  Further, from April 1, 2008 to May 15, 2008, the FAC alleges that Burns stared and leered at Garcia, which caused her significant emotional distress.   The FAC gives notice of the claim and the claim's basis, and the factual allegations show that the claim is plausible; thus,  dismissal is not appropriate.  See Iqbal, 129 S.Ct. 1949-50; Twombly, 125 S.Ct. at 1964-65, 1974; Weber, 521 F.3d at 1065; Sagana, 384 F.3d at 736.

## II.    MOTION FOR MORE DEFINITE STATEMENT

### *Defendant's Argument*

CUSD argues that the FAC contains a vague allegation that, at the SARB meeting, Garcia

---

[26]It is possible to exercise reasonable care/engage in reasonable efforts and still not ascertain an applicant's unfitness.

"gave a brief account of the November and March incidents involving Burns."  CUSD argues that although this allegation forms the basis of four negligence claims, the allegation is not well pled because it is too vague and ambiguous.  Garcia should be required to plead what she said at the SARB meeting with more particularity, especially since other documents indicate that the November Incident was not reported.

### Legal Standard

"If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e).  A Rule 12(e) motion is "aimed at unintelligibility rather than lack of detail and is only appropriate when the defendants cannot understand the substance of the claim asserted." Castenada v. Burger King Corp., 597 F.Supp.2d 1035, 1045 (N.D. Cal. 2009); see Beery v. Hitachi Home Elecs., Inc., 157 F.R.D. 477, 480 (C.D. Cal. 1993); see also Sheffield v. Orius Corp., 211 F.R.D. 411, 414-15 (D. Or. 2002).  Rule 12(e) motions are "not to be used to assist in getting facts in preparation for trial as such; other rules relating to discovery, interrogatories and the like exist for such purposes." Castillo v. Norton, 219 F.R.D. 155, 163 (D. Ariz., 2003); Sheffield, 211 F.R.D. at 415.  "If the moving party could obtain the missing detail through discovery, the motion should be denied." Davison v. Santa Barbara High School District, 48 F. Supp. 2d 1225, 1228 (C.D. Cal. 1998); see Castenada, 597 F.Supp.2d 1at 1045; Buick v. World Sav. Bank, 565 F.Supp.2d 1152, 1160 (E.D. Cal. 2008).

### Discussion

CUSD's motion for more definite statement is not aimed at the entire complaint, rather it is aimed at two allegations in the complaint: "During the [SARB] meeting, [Garcia] and her mother notified the CUSD personnel present of the two incidents," FAC at ¶ 18, and "She gave a brief account of the November and March incidents involving Burns." FAC at ¶ 19.  Prior to Paragraphs 18 and 19, the FAC clearly and understandably described the November and March Incidents.  See FAC at ¶¶ 12-13, 15-17.  The allegations of paragraphs 18 and 19 are not unintelligible in light of the prior allegations.  Although it is possible for the allegations  to

provide more detail by stating exactly what Garcia said at the SARB meeting, that level of detail may be obtained through discovery.  Because the allegations are not unintelligible, and because further detail may be obtained through discovery, CUSD's Rule 12(e) motion will be denied. See Castenada, 597 F.Supp.2d 1at 1045; Buick, 565 F.Supp.2d at 1160; Castillo, 219 F.R.D. at 163; Davison, 48 F.Supp.2d at 1228.

**III.    MOTION TO STRIKE**

*Defendant's Argument*

CUSD argues that portions of six paragraphs (35, 36, 39, 40, 45C, and 45F) from the FAC, as well as the request for attorney's fees, should be struck.  Paragraphs 35, 36, 39, 45C, and 45F all deal with student XYZ, either partially or in their entirety.  However, any allegations relating to student XYZ are immaterial to the case because the incident with XYZ is a completely different occurrence that happened three to four months after Garcia left the School.

With respect to Paragraph 40, that paragraph relates to an incident in the early 1990's at Lincoln Elementary School with an unnamed teacher and administrator Bob Kampf.  CUSD argues that the entire paragraph is immaterial, impertinent, and scandalous because the incident described involved completely different personnel, at a different school, and that occurred 15 to 20 years prior to Garcia.  Further, the paragraph falsely suggests that Kampf does not have valid certification.

Finally, Garcia's request for attorney's fees are inappropriate.  In California, there must be a statutory basis for attorney's fees.  It has long been the rule that attorney's fees are not recoverable in California in actions for assault, battery, and negligence.  If the Court grants the motion to dismiss as to Garcia's sixth, seventh, and twelfth causes of action, there will be no basis for attorney's fees against CUSD.

*Plaintiff's Opposition*

Garcia argues that evidence of other bad acts, either prior or subsequent, is relevant to proving motive or intent under Rule of Evidence 404(b), and Burns's motive and intent is relevant.  The incidents with students ABC and XYZ are relevant to proving Burns's motive and

intent when he picked up and shook Garcia, swatted Garcia in the buttocks, and stared and leered at her.  The incidents, along with Paragraph 40, are relevant to showing that CUSD had a policy of disregarding and/or covering up the sexual misconduct of its teachers towards its students. The incidents are also relevant to proving a policy of deliberate indifference to sexual misconduct by teachers against students.

### *Legal Standard*

Rule 12(f) of the Federal Rules of Civil Procedure allows a court to strike from "any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The purpose of a Rule 12(f) motion is to avoid the costs that arise from litigating spurious issues by dispensing with those issues prior to trial.  See Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir 1993), *reversed on other grounds by* 510 U.S. 517 (1994); Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir.1983).  Immaterial matter is defined as matter that "has no essential or important relationship to the claim for relief or the defenses being pleaded."  Fantasy, Inc., 984 F.2d at 1527.  Impertinent matter is defined as "statements that do not pertain, and are not necessary, to the issues in question."  Fantasy, Inc. 984 F.2d at 1527.  Scandalous matters are allegations "that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court," Cobell v. Norton, 224 F.R.D. 1, 5 (D. D.C. 2004), and "includes allegations that cast a cruelly derogatory light on a party or other person."  In re 2TheMart.com Secs. Litig., 114 F.Supp.2d 955, 965 (C.D. Cal. 2000).  Redundant allegations are allegations that "constitute a needless repetition of other averments or are foreign to the issue."  Wilkerson v. Butler, 229 F.R.D. 166, 170 (E.D. Cal. 2005).  Granting a motion to strike may be proper if it will make the trial less complicated, or if the challenged allegations are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and whose presence in the pleading will be prejudicial to the moving party.  See Fantasy, Inc., 984 F.2d at 1527-28.  A motion to strike also may be used to strike a prayer for relief where the damages sought are not recoverable as a matter of law.  See Gay-Straight Alliance Network v. Visalia Unified School Dist., 262 F.Supp.2d 1088, 1110-11 (E.D. Cal. 2001); Bureerong v. Uvawas, 922 F.Supp. 1450, 1479 n.34 (C.D. Cal. 1996);

see also <u>Nurse v. United States</u>, 226 F.3d 996, 1004-05 (9th Cir. 2000); <u>Bassiri</u>, 292 F.Supp.2d at 1224.  Motions to strike are generally viewed with disfavor and are not frequently granted.  <u>See</u> <u>Bassiri v. Xerox Corp.</u>, 292 F.Supp.2d 1212, 1220 (C.D. Cal. 2003).  Courts must view the pleading under attack in the light more favorable to the pleader.  <u>See id.</u>  "[M]otions to strike should not be granted unless it can be shown that no evidence in support of the allegation would be admissible, or those issues could have no possible bearing on the issues in the litigation." <u>Gay-Straight Alliance Network</u>, 262 F.Supp.2d at 1099.

### *Discussion*

With respect to Paragraph 36, CUSD moves to strike only the parenthetical reference to XYZ.  Paragraph 36 alleges the content of the September 5, 2008, letter to Burns.  <u>See</u> FAC at ¶ 36.  The parenthetical reference reads, "without any mention of Student XYZ's allegations."  <u>Id.</u> As discussed above, the September 5, 2008, letter was to inform Burns of the result of the allegations made against him by Garcia.  The incident with XYZ occurred/was reported after the investigation into Garcia's claims had concluded.  Given the clear purpose of the letter, there was no need to include XYZ's allegations.  That the September 5 letter to Burns is silent regarding XYZ "has no essential or important relationship to the claim for relief . . . being pleaded" nor does it pertain to, or is necessary to, an issue in question; in other words, the allegation is immaterial and impertinent.  <u>Fantasy, Inc</u>. 984 F.2d at 1527.  The parenthetical reference to XYZ in Paragraph 36 will be struck.

As to Paragraphs 45C and 45F, those are subparagraphs of Paragraph 45, which in turn alleges how CUSD ratified Burns's conduct.  <u>See</u> FAC at ¶ 45.  The ratification paragraph is a necessary component to Garcia's intentional tort claims against CUSD.  The Court has dismissed those claims due to a failure to adequately plead ratification.  Since the ratification theory is out of this case, Paragraph 45 has no relevance.  The challenged portions of Paragraphs 45C and 45F have "no essential or important relationship to the claim for relief . . . being pleaded" nor do they pertain to, or are necessary to, an issue in question; in other words, the allegations are immaterial and impertinent.  <u>Fantasy, Inc</u>. 984 F.2d at 1527.   The challenged portions of Paragraphs 45C and 45F will be struck.

1   As to Paragraph 39, that paragraph alleges that CUSD "took no actions against Burns"

2   regarding XYZ despite Burns's prior conduct towards Garcia and ABC.  See FAC at ¶ 39.  The

3   Court has held that the FAC does not plausibly allege ratification or deliberate indifference or a

4   policy of deliberate indifference.  These are the only issues to which the allegation may be

5   relevant.  Therefore, the allegation that CUSD "took no action against Burns" regarding XYZ

6   "has no essential or important relationship to the claim for relief . . . being pleaded" nor does it

7   pertain to, or is necessary to, an issue in question; in other words, the allegation is immaterial and

8   impertinent.  Fantasy, Inc. 984 F.2d at 1527.  Paragraph 39 will be struck.

9   With respect to Paragraph 40, that paragraph discusses the incident at Lincoln Elementary

10  that occurred between 15 and 20 years ago with different personnel and actors.  As discussed

11  above, the incident is too stale to reflect a policy of deliberate indifference.  Paragraph 40 "has no

12  essential or important relationship to the claim for relief . . . being pleaded" nor does it pertain to,

13  or is necessary to, an issue in question; in other words, the allegation is immaterial and

14  impertinent.  Fantasy, 984 F.2d at 1527.  Further, since the paragraph does not show either

15  deliberate indifference or ratification, it is also scandalous in relation to Kampf.  See Cobell, 224

16  F.R.D. at 5; In re 2TheMart.com Secs. Litig., 114 F.Supp.2d at 965.  Paragraph 40 will be struck.

17  With respect to Paragraph 35, that paragraph describes the allegations made by XYZ.

18  Garcia argues that the incident is relevant to show Burns's intent and motive.  The Ninth Circuit

19  has recognized that both prior and subsequent acts may be admissible under Rule 404(b).  See

20  United States v. Sioux, 362 F.3d 1241, 1246 (9th Cir. 2004); United States v. Bibo-Rodriguez,

21  922 F.2d 1398, 1400 (9th Cir. 1991).  Garcia has alleged four intentional torts against Burns,

22  including intentional infliction of emotional distress.  Two of the elements of intentional

23  infliction of emotional distress are the intent to cause emotional distress and severe and

24  outrageous conduct.  See Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 1001 (1993);

25  Judicial Council of California Civil Jury Instructions (CACI) § 1601.  The incident with XYZ

26  may be relevant to explain Burns's motive or intent, or it may help to explain the outrageousness

27  of Burns's conduct in relation to the intentional infliction of emotional distress claim.  The Court

28  is not ruling at this time that the incident with XYZ is admissible under Rule 404(b), as there are

1  four factors, in addition to Rule of Evidence 403, that should be considered in assessing

2  admissibility under that rule.  See Bibo-Rodriguez, 922 F.2d at 1400-01.  However, at this time it

3  is not clear to the Court that the incident with XYZ as alleged in Paragraph 35 could have "no

4  possible bearing on the issues in the litigation."  Gay-Straight Alliance Network, 262 F.Supp.2d

5  at 1099.  Accordingly, Paragraph 35 will not be struck.

6         Finally, with respect to Garcia's request for attorney's fees, "California follows the

7  'American rule,' under which each party to a lawsuit ordinarily must pay his or her own attorney

8  fees."  Musaelian v. Adams, 45 Cal.4th 512, 516 (2009); Trope v. Katz, 11 Cal.4th 274, 279

9  (1995).  By statute, each party to a lawsuit must pay its own attorney fees except where a statute

10  or contract provides otherwise.  Cal. Code Civ. Pro. § 1021; Musaelian, 45 Cal.4th at 516; Trope,

11  11 Cal.4th at 279; Dell Merk, Inc. v. Franzia, 132 Cal.App.4th 443, 450 (2005).  Here, the Court

12  has dismissed the California Education Code and Title IX claims against CUSD.  Without these

13  claims, the Court is unaware of a basis (and Garcia does not identify one) for assessing attorney's

14  fees against CUSD.  Because of the dismissals without leave to amend, Garcia may not obtain

15  attorney's fees from CUSD.  See Cal. Code Civ. Pro. § 1021.  The Court will strike Garcia's

16  prayer for attorney's fees against CUSD.  See Nurse, 226 F.3d at 1004-05; Gay-Straight Alliance

17  Network, 262 F.Supp.2d at 1110-11; Bureerong, 922 F.Supp. 1450, 1479 n.34.

18

19  **CONCLUSION**

20         For a second time, CUSD moves for dismissal of certain claims against it.  As to the

21  Sixth and Twelfth causes of action (Title IX and California Education Code §§ 201(c), 212.5)

22  based on teacher-on-student harassment, the allegations and the documents incorporated by

23  reference affirmatively show that CUSD was not deliberately indifferent to Garcia's complaints.

24  Garcia was removed from Burns's class as requested and later Burns was removed from his

25  classroom duties altogether and told to stay off of CUSD property.  This is conduct that would

26  not cause Garcia to undergo harassment or make her vulnerable to it.  For student-on-student

27  harassment, Garcia again has alleged a bare conclusion that she was harassed and retaliated

28  against by students.  The claim is void of factual support.  Dismissal of these causes of action

without leave to amend is appropriate.

As to Garcia's Seventh cause of action (California Education Code §§ 201(f), 212.5) for "failure to prevent," Garcia again has failed to state a claim because there are inadequate allegations that plausibly show that CUSD has adopted an institutional policy of indifference. Dismissal without leave to amend is appropriate.

As to Garcia's First, Second, Third, and Fourth causes of action (assault, battery, false imprisonment, and intentional infliction of emotional distress) under a ratification theory, the same conduct by CUSD that negates deliberate indifference for Title IX liability also negates ratification. Moreover, the allegations in the FAC and the documents incorporated by reference show that CUSD did not adopt Burns's conduct as its own. CUSD removed Garcia from Burns's class, placed him on administrative leave on May 16, 2008, and told him to stay off of CUSD property, conducted two investigations, issued a formal Notice of Unprofessional Conduct, told Burns that the November, March, and ABC Incidents were unacceptable, and told him that further discipline including suspension or dismissal would be appropriate if he did not correct his behavior. Dismissal of these claims under a ratification theory will be without leave to amend.

As to Garcia's Ninth cause of action (negligent supervision), Garcia has withdrawn her claim in relation to Bass, Cervantes, Jager, and Moua. Dismissal of this aspect of the Ninth cause of action is appropriate. As to Burns, after April 1 2008, CUSD was on notice that he had engaged in improper conduct and may require further supervision, yet no other supervision occurred. Dismissal is not appropriate for supervision of Burns after April 1, 2008.

As to Garcia's Eleventh cause of action (negligent hiring/retention), Garcia has adequately allege that CUSD unreasonably retained and investigated Burns. Dismissal of this aspect of the claim is not appropriate. However, Garcia has withdrawn this claim in relation to Bass, Cervantes, Jager, and Moua. Dismissal of this aspect of the claim is appropriate.

As to CUSD's motion for a more definite statement, CUSD is merely seeking more detail with respect to what precisely Garcia said at the SARB meeting. That detail may be obtained through discovery. As such, the motion for more definite statement will be denied.

As to CUSD's motion to strike, because CUSD did not ratify Burns's conduct, was not

deliberately indifferent to Garcia's complaints, and did not have a policy of deliberate indifference, the incident involving student XYZ is of limited value.  References to XYZ in Paragraphs 36, 45C, and 45F, and the entirety of Paragraph 39 will be struck.  Further, because the Lincoln Elementary incident is too stale to reflect a policy of deliberate indifference, the entirety of Paragraph 40 will be struck.  However, since it is not clear that Paragraph 35 would have no relevance or bearing with respect to Burns's motive and intent in relation to the intentional infliction of emotional distress claim, Paragraph 35 will not be struck.  Finally, because the only claims that provided for attorney's fees against CUSD have been dismissed, the prayer for attorney's fees against CUSD will be struck.

Accordingly, IT IS HEREBY ORDERED that CUSD's:

1.      Rule 12(b)(6) motion to dismiss the First, Second, Third, and Fourth causes of action against CUSD is GRANTED without leave to amend;

2.      Rule 12(b)(6) motion to dismiss Sixth, Seventh, and Twelfth causes of action is GRANTED without leave to amend;

3.      Rule 12(b)(6) motion to dismiss the Ninth claim is GRANTED without leave to amend except for Burns's conduct post-April 1, 2008;

4.      Rule 12(b)(6) motion to dismiss the Eleventh cause of action is GRANTED without leave to amend as to Bass, Cervantes, Jager, and Moua, but DENIED with respect to Burns;

5.      Rule 12(e) motion for more definite statement is DENIED;

6.      Rule 12(f) motion to strike paragraphs 39 and 40, portions of paragraphs 36, 45C, and 45F, and the prayer for attorney's fees against CUSD is GRANTED, but is DENIED with respect to paragraph 35; and

7.      Defendants may file an answer to the First Amended Complaint within twenty (20) days of service of this order.

IT IS SO ORDERED.

Dated:      September 11, 2009                        /s/ Anthony W. Ishii
                                                     CHIEF UNITED STATES DISTRICT JUDGE